Anthony D. BRANNON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-82-76.

Court of Criminal Appeals of Oklahoma.

Oct. 7, 1983.

David Miller, Asst. Public Defender, Oklahoma County, for appellant.

Jan Eric Cartwright, Atty. Gen., Ross Plourde, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant, Anthony D. Brannon, was charged by information for the crime of Robbery with Firearms pursuant to 21 O.S. Supp.1973, § 801, in the District Court of Oklahoma County before the Honorable Charles L. Owens in Case No. CRF–81–3234. The appellant was tried by jury and represented by counsel.

On July 18, 1981, a robbery occurred at a Dairy Queen restaurant in south Oklahoma City. The robber wore an orange scarf, which covered the lower part of his face, and carried a handgun. He fled the restaurant on foot, with approximately $300, to a waiting car located a block away.

When the police arrived, Ms. Hotchkin, an employee at the Dairy Queen, identified the robber as a previous boyfriend, whom she had lived with for about three months. Another employee of the restaurant chose the appellant's picture from a photographic lineup and identified him at trial as the robber.

Appellant admitted he was the perpetrator of the crime in an oral confession to the police. At trial he denied being the robber and claimed that when the robbery occurred, he was visiting relatives in Dallas, Texas.

■ Appellant's first assignment of error asserts that the State improperly commented on his right to remain silent, an assertion which we find patently frivolous.

In response to questioning by the prosecution, the detective testified that after he explained to appellant his constitutional rights, appellant advised him that "he would talk to me about the robberies but if he did come to trial that he would disown any statement that he made to me." It is this Court's opinion that only by distorting a plain meaning of appellant's statement can it be construed as invoking his right to remain silent. Likewise, the detective's testimony can in no way be construed as a comment on appellant's silence.[1] To the contrary, appellant's response indicated a desire to talk with the detective. This assignment of error is groundless.

Appellant asserts in his second assignment of error that Hardy Martin's identifi-

1. For an example of comment on defendant's right to remain silent see *Kinney v. State*, 634 P.2d 746 (Okl.Cr.1981).

cation of him at trial was tainted by a suggestive photographic lineup.

■ When the photographic identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, the due process clause of the 14th amendment is violated." *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). However, in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court held that the admissibility of identifications depends upon their reliability under the totality of the circumstances. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), further clarified the law in holding that reliability of identification is the single determinative quality of admissibility. The factors to be weighed in assessing reliability are: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and, (5) the length of time between the crime and the confrontation.

■ Although he fails to support his contention by including the photographs as part of the record, appellant asserts that the testimony of the witness reveals the suggestive nature of the photographs. The transcript indicates that Martin was shown five or six photographs, all of which were black males between the ages of 20 and 30. He testified that he identified the appellant by his facial features and answered affirmatively when defense counsel inquired, "The only picture that even resembled the man that committed the robbery was that of the defendant, is that correct?"

We would be hardpressed to arrive at a finding concerning the photographic lineup with the limited record we have been supplied. Notwithstanding any conclusion that we would draw concerning the suggestiveness of the photographic lineup, we find that under the totality of the circumstances, the State established the reliability of Martin. Martin observed appellant for

about five minutes from fifteen feet away while the robbery was in progress, and with nothing to divert his attention from the robber. He gave an accurate description of appellant, including the fact that he had a pierced ear, and when shown the photographic lineup within hours of the robbery, did not hesitate to choose his photograph. We are convinced that Martin's identification of appellant was based on his observation at the time of the robbery, not from the pretrial photographic lineup.

■ Appellant cites no authority for his third assignment of error in which he baldly asserts that the trial court should have granted a mistrial when Detective Johnson testified regarding appellant's statement to him following the *Miranda* warnings. We will not search the books for appellant in the absence of fundamental error. *Sandefur v. State,* 461 P.2d 954 (Okl.Cr.1969). Finding no fundamental error apparent from the record, we decline to review this assignment of error.

Appellant's fourth assignment of error concerns three alleged evidentiary harpoons that were injected into Detective Johnson's testimony. Evidentiary harpoons are typically characterized by the following features: (1) they are generally made by experienced police officers; (2) they are voluntary statements; (3) they are wilfully jabbed rather than inadvert; (4) they inject information indicating other crimes; (5) they are calculated to prejudice the defendant; and, (6) they are prejudicial to the rights of the defendant on trial. *Bruner v. State,* 612 P.2d 1375 (Okl.Cr.1980).

■ The first alleged harpoon occurred when in response to the prosecutor's question, Detective Johnson stated, "[appellant] advised me that he would talk to me about the robberies" and thereby implied that appellant had committed other crimes. Unfortunately, no objection to the remark was entered and it is well settled that unless objection is made to evidentiary harpoons any error is waived. *Id.*

 Similarly, no objection was entered to the second alleged harpoon when Detective Johnson repeated that appellant had told him that after counting the money he realized that he had gotten less than one hundred dollars, which was not enough. Appellant claims that within this evidentiary harpoon it was implicit that he had committed other crimes. If Detective Johnson's response could be construed as an evidentiary harpoon, any error was waived under *Bruner.* Further, we disagree that there was any implication of other crimes present in the statement which would be apparent to the jury. "An implication of another crime which is obvious only to defense counsel is not inadmissible as evidence of other crimes." *King v. State,* 640 P.2d 983 (Okl. Cr.1982).

 Finally, appellant asserts that Detective Johnson's response to defense counsel's questions about the robbery weapon was an evidentiary harpoon. The testimony went as follows:

Q. Okay. Now, did you ever go out and try to find this piece of plastic?

A. No, sir, I did not.

Q. And why didn't you?

A. Basically because I didn't think that he had left it where he said he had.

Q. Why did you feel that way?

A. *Well, because a few minutes later a robbery was reported after this one occurred.* (Emphasis added.)

It is clear from the testimony that the detective's opinion would not have surfaced but for the insistence of defense counsel in questioning why the detective did not believe appellant's story. Thus, as in *Bruner,* this Court concludes that defense counsel opened the door through his questioning. Furthermore, following defense counsel's objection, the trial judge admonished the jury to disregard Detective Johnson's statement, which this Court concludes cured any error. In light of the fact that the evidence of appellant's guilt was overwhelming, the detective's statement could not have determined the verdict.

 Appellant contends in his last assignment of error that he was denied a fair trial because of the cumulative effect of the errors committed at trial. Where there is no individual error, there can be no error by accumulation. *Hawkes v. State,* 644 P.2d 111 (Okl.Cr.1982). This assignment of error is therefore, meritless.

The judgment and sentence is AFFIRMED.

BUSSEY, P.J., and CORNISH, J., concur.