Jerry Wayne GLENN, Alfred Eugene Perry and John Lee Phelps, Appellants,

v.

STATE of Oklahoma, Appellee.

No. F–85–750.

Court of Criminal Appeals of Oklahoma.

Jan. 13, 1988.

John F. Bates, Oklahoma City, for appellants.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellants Jerry Wayne Glenn, Alfred Eugene Perry and John Lee Phelps were each convicted in the District Court of Cleveland County of Exhibiting Obscene Motion Pictures. Glenn, Case No. CRF–84–1368, was convicted of five counts and sentenced to one year of imprisonment on each count. Perry, Case No. CRF–84–1366, and Phelps, Case No. CRF–84–1367, were each convicted of two counts, and fined $100.00 on each count. They appeal raising nine assignments of error.

Briefly stated, the evidence reveals that on December 11 and 14, 1984, five videotape movies were among the items seized pursuant to search warrants issued on those respective dates of the Pleasure Chest in Norman. Testimony reveals that appellant Perry was the clerk operating the store on December 10, 1984 when three of the movies were exhibited, and appellant Phelps was the clerk operating the store on December 12, 1984 when the other two movies were exhibited. Appellant Glenn was the sole owner of the "adult" bookstore where the videotapes were available for viewing by depositing tokens, available at the bookstore, into videotape machines and viewing the tapes in individual viewing booths located in the store.

The appellants' first assignment of error argues that the obscenity statute, 1984 Okla.Sess.Laws, ch. 91, § 4, now 21 O.S.Supp.1986, § 1024.1,[1] is unconstitution-

---

1. The portion of the statute of which the appellants complain provides:
 2. "Performance" means and includes any live or cinematic show of whatever nature over any broadcast media, if the performance contains the following:

 \* \* \* \* \* \*

al. They argue that the statute contains so many value judgments that an individual cannot know with reasonable certainty whether he is committing a crime, and therefore the statute is unconstitutionally vague. The portion of the statute of which the appellants complain, are codifications of the holding of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).[2] That Court stated, "We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." *Miller*, 413 U.S. at 27, 93 S.Ct. at 2616–17. As this provision incorporates each of the standards set out in *Miller*, the statute may be constitutionally applied.

■ In their next assignment of error, appellants Phelps and Perry cite 21 O.S. 1981, § 1040.53 [3] for the proposition that they were protected from prosecution. They claim that their only involvement in the appellant Glenn's "adult" bookstore was as changemakers, and that the cited statute therefore exempts them from liability. The exemption from prosecution clearly applies to obscene motion pictures "shown in a commercial theater open to the general public", and exempts the projectionists, assistant projectionists, ushers, or cashiers who have "no financial interest in the show or in its place of presentation" other than employment in the listed capacity. In construing this statute, we are obligated to employ the common and ordinary meaning of the statutory term. *Glass v. State*, 701 P.2d 765 (Okl.Cr. 1985). The fact that the statute contemplates projectionists, ushers, and cashiers clearly shows that the statute is referring to buildings or areas for showing motion pictures attended by the general public. We reject the appellants' argument that an "adult" bookstore which provides individual booths for viewing token-operated videotapes fits within the definition of a commercial motion picture theater.

■ In a subproposition, the appellants, Phelps and Perry, claim that their actions did not amount to an "exhibition" within the meaning of Section 1 of the 1984 Okla. Sess.Laws, ch. 91, now 21 O.S.Supp.1986, § 1021. That statute prohibits the exhibition of any obscene or indecent materials.[4] This statute would include obscene or inde-

---

b. The obscene material or performance contains depictions or descriptions of sexual conduct which are patently offensive; and
c. The obscene material or performance taken as a whole has as the dominant theme an appeal to prurient interest, as found by the average person applying contemporary community standards; and
d. The obscene material or performance taken as a whole lacks serious literary, artistic, educational, political, or scientific purposes or value.

2. The Supreme Court of the United States set out the following guidelines for the trier of fact:
(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra*, 408 U.S. [229], at 230, 92 S.Ct. [2245] at 2246 [33 L.Ed.2d 312 (1972) ], quoting *Roth v. United States, supra*, 354 U.S. [476], at 489, 77 S.Ct. [1304], at 1311 [1 L.Ed.2d 1498 (1957) ];
(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

3. The statute provides in pertinent part:
The provisions of statutes of this state and the provisions of ordinances of any city prescrib-ing a criminal penalty for exhibit of any obscene motion picture shown in a commercial theater open to the general public shall not apply to a projectionist or assistant projectionist, usher or cashier, provided he has no financial interest in the show or in its place of presentation other than regular employment as a projectionist or assistant projectionist, usher or cashier. Provided further, that such person is not acting as manager or director of such theater.

4. Title 21 O.S.Supp.1986, § 1021(A) provides:
A. Every person who willfully either:
 * * * * * *
3. writes, composes, stereotypes, prints, photographs, designs, copies, draws, engraves, paints, molds, cuts, or otherwise prepares, publishes, sells, distributes, keeps for sale, or exhibits any obscene or indecent writing, paper, book, picture, photograph, motion picture, figure, or form of any description, ... shall be guilty, upon conviction, of a felony and shall be punished by the imposition of a fine of not less than One Hundred Dollars ($100.00) nor more than Ten Thousand Dollars ($10,000.00) or by imprisonment for not less than thirty (30) days nor more than ten (10) years, or by both such fine and imprisonment.

cent videotapes. The appellants argue that the testimony reveals they were merely present when the videotapes were running, and exercised no control over the selection of tapes for viewing, nor did they collect money for viewing. The record reveals that the jackets for the videotapes were openly displayed in a display case near the viewing booths. This display case was plainly visible from most of the areas in the store, including the counter which was attended by the appellants. Bookstore customers could view the tapes by entering one of thirteen viewing booths, inserting tokens obtained from a change machine, and selecting the tape which the customer wished to view. Title 21 O.S.1981, § 172 provides: "All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals." As Phelps and Perry during the respective times that they were in the bookstore were each there alone as the sole employees of the store, and each was solely responsible for keeping the bookstore open for business, and because the videotape jackets were openly on display, we find that there was sufficient evidence presented for the jury to determine that Phelps and Perry were principals in the exhibition of these videotapes.

█ In their third assignment of error, the appellants allege that the failure of police officers to leave a copy of the written inventory of the items seized pursuant to the instructions in the search warrant requires that the evidence seized be suppressed. We first note that Fourth Amendment rights cannot be vicariously asserted, and therefore as Phelps and Perry have no possessory interest in the items seized, they have no standing to assert this assignment of error. *See McCrary v. State,* 533 P.2d 629 (Okl.Cr. 1974). As for appellant Glenn, he has not shown how his rights were violated by the officer's failure to deliver a receipt, as 22 O.S.1981, § 1233 requires officers to deliver the inventory of the property taken to the magistrate. Title 22 O.S.1981, § 1234 provides that the delivery of a copy of the inventory to the person

from whose possession the property was taken is the responsibility of the magistrate, and the appellants have not cited any applicable authority which would hold that the failure of the magistrate to deliver a copy of the inventory violates the constitutional rights of the appellant, Glenn. Although he asserts that his property rights were infringed, Glenn fails to show how, or cite authority, and we cannot find how the appellant Glenn was prejudiced by this failure. *Brannon v. State,* 670 P.2d 601 (Okl.Cr. 1983) holds that where an appellant cites no authority for his proposition, this Court will not search the books for the appellant. Failing to find fundamental error, this assignment of error is meritless.

█ The appellant, Glenn, in a fourth assignment of error, asserts, that he was improperly questioned prior to being informed of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that therefore any statements which he made at that time should have been suppressed by the trial court. Glenn talked to Detective Dupois of the Norman Police Department at Glenn's bookstore about four hours before a search warrant was served. Glenn had talked to Dupois before, and knew that he was a police officer. Detective Dupois was there as a part of an investigation of the bookstore. In *Little v. State,* 627 P.2d 445 (Okl.Cr. 1981) this Court discussed when the *Miranda* warning must be given. We stated that, "*Miranda* warnings, ... are only required under custodial interrogation. Custodial interrogation is that questioning initiated by law enforcement officers after a person has been taken into custody or is otherwise deprived of his freedom in any significant way."

*Little,* 627 P.2d at 447. The record does not reveal that Glenn was deprived of his freedom in any significant way, and we find that under these circumstances, a *Miranda* warning was not required.

█ The appellants next complain that defense counsel was not allowed to individually voir dire the prospective jurors. Defense counsel requested before the voir

dire that the prospective jurors be individually questioned outside the presence of the panel because the individuals would be more likely to be candid on matters of individual conscience and attitude regarding sexual materials. Whether an individual voir dire outside the presence of the panel should be conducted is a matter for the discretion of the trial court. *Morrison v. State*, 619 P.2d 203 (Okl.Cr. 1980). One juror candidly stated that she could not be impartial because of the nature of the case, and was excused for cause. Having examined the transcript of the voir dire, we can find no abuse of the trial court's discretion. This assignment of error is meritless.

■ The appellants in their sixth assignment of error maintain that the trial court gave an improper instruction on scienter because it went beyond the instruction mandated in *Hanf v. State*, 560 P.2d 207 (Okl.Cr. 1977). The appellants admit that no objection was made to the instruction they question, nor was an instruction in writing submitted. Therefore, the appellants failed to properly preserve this issue for review. *See Phipps v. State*, 572 P.2d 588 (Okl.Cr. 1977).

■ In their seventh assignment of error the appellants contend that the State did not prove scienter. They claim that they only knew that the tapes contained sexual activity of some sort. "Scienter does not mean that a defendant must have been aware at the time he sold the publication that the material it contained was obscene. It requires only that he was aware of the actual contents of the publication." *Hanf*, 560 P.2d at 210. In *Morrison*, 619 P.2d at 208, we held that:

The requirement of scienter serves to prevent imposing strict or absolute liability on book and film distributors, irrespective of their knowledge of the contents of the book and even if they lack the slightest notice of the character of the items sold.

... [T]he prosecution need only show that accused knew the nature and character of what he is selling.

The same knowledge is required for the exhibition of obscene videotapes. The issue is whether or not the appellants each knew the nature and character of what was being exhibited on the videotapes. This knowledge is usually, if not always, proven by circumstantial evidence. *See Hanf*, 560 P.2d at 210. Such evidence would include: first, the fact that the display case with the videotape jackets could easily be seen from the store counter; second, the titles of the tapes along with the pictures portrayed on the fron gives a clear indication of the sexual content; third, the admissions of the appellants on the witness stand that they knew of the sexual nature of the tapes; and last, the fact that individual, locking booths were provided for privacy. All of these circumstances could allow a reasonable fact-finder to conclude that: first, the videotapes contained depictions of sexual content which would be patently offensive; second, the dominant theme of the tapes appealed to prurient interest as found by the average person applying contemporary community standards; and third, that the material taken as a whole lacked serious literary, artistic, educational, political, or scientific purposes or value. Finally, the fact-finder could conclude from this evidence that the appellants must have known the nature and character of these videotapes. Accordingly, sufficient evidence has been shown that scienter was present. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ The appellants next urge that the videotapes shown to the jury were not obscene. This assignment of error questions the sufficiency of the evidence. The test for sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Spuehler v. State*, 709 P.2d 202, 203–204 (Okl.Cr. 1985). If this test is satisfied, then all questions of fact are for the trier of fact to resolve. *Hunt v. State*, 601 P.2d 464 (Okl.Cr. 1979), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980). Given the facts previously discussed in the seventh assignment of error, we find that the evidence

was sufficient to establish that the videotapes were obscene.

 The final assignment of error is that of appellant Glenn who argues that his sentence is excessive. We have repeatedly held that this Court will not modify an allegedly excessive sentence unless under all of the facts and circumstances of the case, the sentence is so excessive that it shocks the conscience of this Court. *Scott v. State*, 674 P.2d 54 (Okl.Cr. 1984). Section 1(A) of the 1984 Okla.Sess.Laws, ch. 91, now 21 O.S.Supp.1986, § 1021(A), provides for a fine of not less than $100.00 nor more than $10,000.00, or imprisonment for not less than thirty days nor more than ten years, or by both such fine and imprisonment. Considering that the sentence is well within the statutory limits, and that the evidence against the appellant is overwhelming, we cannot say that the sentence shocks this Court's conscience.

The judgments and sentences are AFFIRMED.

PARKS, J., concurs.

BRETT, P.J., concurs in part, dissents in part.

BRETT, Presiding Judge: concurring in part and dissenting in part.

I concur in the part of this decision that affirms the conviction of Jerry Wayne Glenn; however, I dissent to that part of the decision that affirms the convictions of Alfred Eugene Perry and John Lee Phelps.

There is no doubt in my mind but that Perry and Phelps fall within the exception to the provisions of 21 O.S.1981, § 1040.53. That statute excepts from its provisions, "... projectionists or assistant projectionists, ushers or cashiers provided he has no financial interest in the show or in its place of presentation other than regular employment.... Provided further, that such person is not acting as manager or director of such theatre."

Because appellants Perry and Phelps, as stated in the Attorney General's brief, "did not personally serve as projectionists or do more than perhaps make change ..." the attempt is made to place them under the provisions of 21 O.S.1981, § 172, which defines "Principals," as well as aiders and abetters. The Attorney General submits that because Perry and Phelps, as employees, were required to keep the business open, they are criminally liable. If anything, they were serving as cashiers, since they accepted the money and gave a token in exchange for the money, in the same manner that a cashier in an ordinary public theatre accepts the money and hands the purchaser a ticket. In short, the State is stretching to cause these two appellant to be criminally liable as aiders or abettors. On this basis alone, their convictions should be reversed. The evidence clearly showed that Glenn was the owner and operator of the shop and Perry and Phelps were nothing more than employees with no financial interest in the business whatsoever.

Therefore, I would reverse and remand with instructions to dismiss as to Perry and Phelps. With reference to appellant Glenn, defense counsel is admonished to consider the provisions of 22 O.S.1981, § 994, concerning an application for suspension of the jail sentence of one year.