**Anthony Aloysius DAVIS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–94–1232.**

Court of Criminal Appeals of Oklahoma.

April 12, 1996.

---

**3.** *See in this connection F.W. Woolworth Co. v. Todd,* 204 Okl. 532, 231 P.2d 681, 684 (1951); *Roberts v. Merrill,* Okl., 386 P.2d 780, 783 (1963).

William R. Holmes, Norman, for Appellant at Trial.

Nancy Walker–Johnson, Norman, for Appellant on Appeal.

Lori Nettleton, Assistant District Attorney, Oklahoma City, for Appellee at Trial.

W.A. Drew Edmondson, Attorney General of Oklahoma, Patrick T. Crawley, Assistant Attorney General, for Appellee on Appeal.

## OPINION

LANE, Judge:

Appellant, Anthony Aloysius Davis, was convicted by jury trial in the District Court of Oklahoma County in Case No. CF–93–4859 before the Honorable Richard W. Freeman, District Judge. Appellant was found guilty on five counts resulting primarily from his operation of a computerized bulletin board system[1] where he trafficked in obscene pictures. He was convicted of the following:

Counts I and II: Distribution of Obscene Pictures in violation of 21 O.S.1991, § 1021(A)(3);

Count III: Possession of Obscene Material in violation of 21 O.S.1991, § 1024.2;

Count IV: Trafficking in Obscene Pictures in violation of 21 O.S.1991, § 1040.51; and,

Count V: Using a Computer to Violate Oklahoma Statutes in violation of 21 O.S.1991, § 1958.

The jury fixed punishment at five years imprisonment and a fine of $1,000.00 on each of the first three counts. In addition, the jury set punishment at five years imprisonment and a $25,000.00 fine for Count IV and five years imprisonment and a $5,000.00 fine for Count V. The jury recommended concurrent sentencing, but the trial court ordered the sentences to run consecutively and suspended the sentences in Counts III, IV and V. The trial court also ordered the Appellant to perform 500 hours of community service. Appellant has perfected his appeal and raises seven propositions of error in his brief-in-chief.

The present case involves novel issues for the Court with regard to the application of Oklahoma's obscenity statutes to the use of computer technology. We find that obscene material stored in electronic media and systems operators, or "sysops," of commercial computer bulletin board systems can be subject to the obscenity statutes. We affirm the judgment and sentence.

## SUMMARY OF FACTS

In April of 1993, Lieutenant Tony Gregory of the Oklahoma City Police Department received a telephone call from an anonymous source that "obscene CDs" were being sold by an individual from a business called "Teleco," located at 1501 Southeast 66th Street in Oklahoma City. Sergeant Tony Gracey was assigned to investigate the caller's tip. Gra-

---

1. "A computer bulletin board system is the computerized equivalent of the bulletin boards commonly found in the work place, schools, and the home." David Loundy, *E–Law: Legal Issues Affecting Computer Information Systems and System Operator Liability*, 12 COMPUTER/L.J., 101, 103 (1993). "[T]he BBS user connects his or her personal computer to the 'host' computer, usually via a telephone line." *Id.* "To run a computer bulletin board system, three things are needed. The first item is a computer. Bulletin board systems can be run on virtually any size computer, from a small personal computer costing a few hundred dollars, to a large mainframe computer affordable only to large corporations and universities. Second, bulletin board software is needed, which can be obtained either commercially or for free. Finally, there must be a way for people (usually called 'users' in computer jargon) to access the bulletin board. This is accomplished via a modem or connection to a computer network." *Id.* at 103, n. 3.

cey spoke to the Appellant in the Teleco business office in late May, 1993. When Gracey asked if the Appellant had any interactive CD–ROMs, the Appellant replied that he did not, but that he could get some "adult" CD–ROMs.

Gracey returned to the Appellant's business on June 4, 1993. After the Appellant's secretary ushered Gracey into Appellant's office, Gracey said, "I'm here to talk to you about the adult CD–ROMs." Appellant closed his office door and produced a stack of eight CD–ROM discs. To Gracey's question, "Are these hard core?" Appellant replied, "They don't get any harder core than this." Appellant told Gracey the discs were illegal in Oklahoma, but were legal in Texas, and the local district attorney "was trying to clean up the county" and was "real bad on pornography." Gracey purchased one of the eight CD–ROM discs which was entitled "Triple X Extreme." Gracey paid $99.90 in cash for the disc. The disc held a number of subdirectories with names of sexual or erotic themes. At trial, Gracey entered "Triple X Extreme" into a computer's disc drive. He displayed images from the disc's files to the jury and proceeded to read the subtitles of a narrated story line accompanying moving images of various sexual acts portrayed by human actors.

The Appellant received a telephone call from Gracey on July 2, 1993. Gracey told Appellant he wanted another CD–ROM disc and Appellant replied he had plenty which were available. When Gracey arrived at Teleco, Appellant again presented Gracey with a stack of seven or eight discs. Gracey asked which disc was the best, and Appellant replied, "they [were] pretty much all the same." Gracey purchased a disc entitled "Volcano Hot Pics" for $100.00 in cash. Gracey returned this disc to the Appellant on July 12th and told the Appellant he did not like what it had on it, because it was not as hard core as he expected. Gracey asked for another disc in exchange for "Volcano Hot Pics." Appellant became upset with Gracey and stated that because the cartridge had already been opened Appellant would not take it back. Appellant was reminded by Gracey that the cartridge had already been

opened when he purchased it. Appellant presented Gracey with a stack of CD–ROM discs and said, "Well, pick one and that's it this time." Gracey exchanged "Volcano Hot Pics" for a disc entitled "Ecstasy Hot Pics." At trial, the prosecution showed images from certain software files stored on the "Ecstasy Hot Pics" disc at trial. The obscenity evidence from this CD–ROM disc took the form of still pictures, or a slide show of images, rather than an animated projection on the computer monitor. These pictures were reproduced from a video capture board and scanner which translated pictures on film into digitized binary data capable of being held on disc.

On July 19, 1993, District Judge Virgil Black viewed the images accessed from the data held on the discs Sergeant Gracey purchased from Appellant. After determining that "Triple X Extreme" and "Ecstasy Hot Pics" contained obscene material under 21 O.S.1991, § 1024.2, Judge Black issued a search warrant and Oklahoma City police officers executed the warrant the following day. After the police arrived at Teleco on July 20th, the Appellant cooperated in allowing them to obtain evidence. He voluntarily showed them twenty-five "adult" compact discs in a box. The Appellant told the police that he had more "adult" discs in his office. The police seized six more discs situated on top of Appellant's desk which included the discs entitled "Triple X Extreme" and "Ecstasy Hot Pics." During the search, the police seized four more compact discs which were housed within a CD–ROM disc changer attached to a larger computer system. The police obtained a total of fifty-three compact discs of various titles. The police also seized the Appellant's business records which included mail order invoice forms showing that he had distributed "adult" discs to customers as far away as Australia and Hong Kong.

The State introduced photographs of four disc cartridges for the discs held within the CD–ROM disc changer used for allowing subscribers to access the files of the discs for their own viewing. The titles of these discs had cryptic names such as "Storm II Giflited Gif's," "BB Graphic Software, Volume I," "FAO CD–ROM Disc, Vol. 2, Profit Publish-

ing," and "FAO CD–ROM Disc, Vol. 3, Profit Publishing." The four discs held within these cartridges formed the basis of the trafficking` charge in Count IV. The Appellant operated a computer bulletin board named Oklahoma Information Exchange. Subscribers could access the images contained on the discs played on the computer system, such as the four discs playing within the computer system's disc changer when the police arrived. Before being transported to jail, the Appellant told the police that a person could call up his system and view what the discs were playing.

Nine telephone lines were attached to modems connected to the computer system. The modems were connected to two central processing computer units. A subscriber would call in by telephone through a modem attached to his personal computer to one of the Appellant's modems. The Appellant's modem would then translate an anti-lock signal into an additional signal which the Appellant's computer system would then process. The signals allowed the person calling in to use a software program that allowed him to access and download (i.e. copy) the files contained within the computer discs being played.[2] Thus, a subscriber using a personal home computer at a different location could select a file from one of the CD–ROM discs being played on Appellant's computer system, download the file into his personal home computer, and then with the aid of translation software view the images from the file on his monitor.

Before accessing the obscene files, a subscriber must first obtain a password from the Appellant. The Appellant only gave the password to subscribers who submitted a written request to subscribe to the Adults Only Section of the Oklahoma Information Exchange bulletin board and who claimed to be over twenty-one years of age. Every subscriber paid a fee of $35.00 for six months use of the bulletin board. No extra charge was levied for access to the Adults Only Section. The Appellant advertised in the May, 1993 issue of *Monitor*, a local computer

interest newspaper published by the OKC Personal Computer Users' Group, that more than 40,000 of the 190,000 computer files available on the Oklahoma Information Exchange bulletin board were of an "adult" or sexually explicit nature.

## FAIR WARNING UNDER OKLAHOMA'S OBSCENITY STATUTES

In the first of his seven propositions of error, the Appellant argues CD–ROM discs containing obscene material are not prohibited in Oklahoma and that he was deprived of his constitutional right to due process on all five counts on the grounds the statutes did not provide fair warning of the conduct for which he was prosecuted and convicted. He does not challenge the jury's finding that the images shown at trial were obscene, and he explicitly states in his brief that he does not argue that the statutes in question are vague or over broad.

The Court's commitment to the constitutional right to fair notice, or fair warning, is not in conflict with the Court's commitment to proper statutory interpretation. In construing a statute, the Court of Criminal Appeals gives effect to the intent of the Legislature. See *State v. Day*, 882 P.2d 1096, 1098 (Okl.Cr.1994). "A statute should be given a construction according to the fair import of its words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." *State ex rel. Hicks v. Freeman*, 795 P.2d 110, 112 (Okl.Cr.1990), *Jordan v. State*, 763 P.2d 130, 131 (Okl.Cr.1988).

## A. COUNTS I AND II: DISTRIBUTION OF OBSCENE PICTURES

The only statutory provision at issue with regard to Counts I and II is 21 O.S. 1991, § 1021(A)(3). The Appellant was charged with the crime of "distribution of obscene writing, paper, book, picture, photograph, motion picture or form of any description" for selling Sergeant Gracey "Triple X

---

2. "Many Bulletin Board systems permit the uploading and downloading of files. A BBS providing a section of files for its users to download can distribute almost any type of computer file.

These files may consist of text, software, pictures, or even sounds." D. Loundy, 12 COMPUTER/L.J. at 105.

Extreme" on June 4, 1993, and "Ecstasy Hot Pics" on July 12, 1993. The Appellant contends that CD–ROM discs are not "writing[s], paper[s], book[s], picture[s], photograph[s], motion picture[s], figure[s], or form[s] of any description" as stated in Section 1021(A)(3). The briefs of the parties battle over the meaning of the term "form of any description," but we limit our discussion to the issue of whether the CD–ROM discs now being considered are included in the term "picture" under the plain meaning of the statute.

According to *Webster's New Riverside University Dictionary* (Houghton Mifflin 1984), a "picture" is defined as follows:

> 1. A visual representation or design rendered on a surface, as by drawing, painting, photography, or print-making. 2. A visible image, esp. one on a flat surface, < saw my *picture* reflected in the glass > . . . .

The graphics produced on a computer terminal's monitor by accessing the data contained in the CD–ROM discs were visual representations on a monitor screen. The scope of the plain meaning of the word "picture" encompasses graphics on a computer monitor within its strict definition. The obscenities were within the graphics produced on a computer monitor, and these graphics constituted obscene pictures proscribed for distribution under 21 O.S.1991, § 1021(A)(3).

■ Appellant argues because the digital, binary files of the discs "cannot simply be turned into images" without the aid of other computer software and hardware, the disc media do not fall within any of the statutory prohibitions. The medium of translating the data held on the discs into pictures is immaterial to our analysis. Rather, the Appellant distributed obscene pictures by distributing the discs which could then be used to display obscene visual images. An apt analogy would be handing a person a locked box full of obscene magazines. The taker of the box holds a key, or could easily obtain a key, to open the box. Because the box could be (eventually) opened, the obscene magazines

are distributed in violation of the law. The "key" in the present case is the necessary computer software and hardware to access the obscene pictures made available by the "locked box" (i.e. the disc). Accordingly, we hold that the Appellant's sales to Sergeant Gracey of the CD–ROM discs were distributions of obscene pictures in violation of Section 1021(A)(3). The Appellant was not deprived of fair warning under this statutory provision that his deliveries of these discs to Sergeant Gracey were prohibited.

## B. COUNT III: POSSESSION OF OBSCENE MATERIAL

■ The Appellant was charged and convicted of Possession of Obscene Material by willfully and knowingly having in his possession four obscene CD–ROM discs. The possession count alleged the same CD–ROM disc titles as the discs alleged in the trafficking count. The State introduced evidence that Appellant not only held "FAO CD–ROM disc Vol. 2, Profit Publishing" and "FAO CD–ROM Vol. 3, Profit Publishing" in the disc changer, but he had in his possession two other discs with these titles in separate cartridges.[3] The evidence at trial of the visual images accessed from the two discs took the form of still pictures rather than animated, or motion pictures. The statutes at issue are found in 21 O.S.1991, §§ 1024.1(1) and 1024.2.

Section 1024.1(1) reads in pertinent part:

### § 1024.1. Definitions

As used in this act:

> 1. "Obscene material" means and includes any photographic product depicting actual human models or actors, whether in the form of still photographs, undeveloped film, videotape, or a purely photographic product or a reproduction of such product in any book, pamphlet, magazine or other publication, . . .

\* \* \* \* \* \*

Section 1024.2 reads:

---

**3.** Evidence of Appellant's possession of discs with these titles separate from his possession of two of the discs with the same titles in the disc changer, which were being played for his bulletin board customers when the police arrived, was introduced in State's Exhibits 65 and 66.

**§ 1024.2. Purchase, procurement of possession of obscene material—Penalty**

It shall be unlawful for any person to buy, procure or possess obscene material in violation of this act. Such person shall, upon conviction, be guilty of a felony and shall be imprisoned for a period of not more than five (5) years or a fine of up to, but not exceeding Five Thousand Dollars ($5,000.00) or by both such fine and imprisonment.

The visual images accessed from these two discs were not motion pictures, undeveloped film or videotape. A monitor screen is not a photosensitive surface, such as the silver halide surfaces of traditional photographic film. However, the video capture board and scanner used to record the obscene images produced by these discs reproduced the images—aided by appropriate computer hardware and software—with the exactness of a photograph. We, therefore, find that the still pictures accessed from "FAO CD–ROM disc Vol. 2, Profit Publishing" and "FAO CD–ROM disc Vol. 3, Profit Publishing" were photographic products within the meaning of Section 1024.1(1), and the Appellant was not denied fair warning under the statutory provision.

## C. COUNT IV: TRAFFICKING IN OBSCENE PICTURES

■ In Count IV the Appellant was charged and convicted of the crime of trafficking in obscene pictures in violation of 21 O.S.1991, § 1040.51.

Section 1040.51 states:

Any person who knowingly buys, sells, barters, traffics in, or causes to be delivered or transported into Oklahoma any picture, moving picture, drawing, electronic video game, diagram, or photograph of any person or animal or caricature thereof in an act of sexual intercourse or unnatural copulation, upon conviction, shall be deemed guilty of a felony and shall be punished by a fine of not to exceed Twenty-five Thousand Dollars ($25,000.00) or by imprisonment for not to exceed fifteen (15) years, or by both such fine and imprisonment.

Nothing contained in this section shall prohibit the use of any of the above-mentioned items pursuant to medical prescription by a duly-licensed physician in the State of Oklahoma, or in recognized schools of medicine or veterinary science for educational purposes.

The terms "barter" and "traffic in" as used in Section 1040.51 "have the popular meaning of an exchange or passing of goods, merchandise, or commodities for an equivalent in goods or money." *Hess v. State,* 536 P.2d 366, 369 (Okl.Cr.1975). By allowing subscribers to access the files within these discs for Appellant's own commercial gain, he was trafficking in obscene pictures. The pictures were merchandise the Appellant exchanged for money, and these pictures came within the plain meaning of Section 1040.51. Again, the Appellant was not denied fair warning under the statutory provision.

## D. COUNT V: USING A COMPUTER TO VIOLATE OKLAHOMA STATUTES

■ Count V is authorized by 21 O.S.1991, § 1958 of the Oklahoma Computer Crimes Act. Section 1958 states in relevant part:

No person shall communicate with, store data in, or retrieve data from a computer system or computer network for the purpose of using such access to violate any of the provisions of the Oklahoma Statutes.

The Appellant used his computer system to traffic obscene pictures to bulletin board subscribers. By storing and retrieving data in his computer system with the purpose and intent to traffic in obscene pictures, the Appellant's conduct fell within the scope of Section 1958. He was not denied fair warning under this statute.

### CONSTITUTIONALITY OF THE POSSESSION COUNT

■ In his next proposition of error, the Appellant contends that the possession count should be reversed because Section 1024.2 is unconstitutional as applied to him under *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). The author of *Stanley's* majority opinion, the late Justice

Thurgood Marshall, wrote, "We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." *Id.,* 394 U.S. at 568, 89 S.Ct. at 1249. Whether "mere private possession" was limited to "mere private possession within the home" was unclear to this Court for a time. *See Cherokee News & Arcade, Inc. v. State,* 509 P.2d 917, 921 (Okl. Cr.1973).

 We received further guidance on the breadth and clarity of *Stanley's* holding from subsequent Supreme Court decisions. *See generally Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *United States v. 12 200–Ft. Reels,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). The constitutional right of privacy to possess obscene materials is restricted to the home.[4] *See Slaton,* 413 U.S. at 66–67, 93 S.Ct. at 2640; *see also 12 200–Ft. Reels,* 413 U.S. at 126–27, 93 S.Ct. at 2668. This interpretation of the breadth of *Stanley's* constitutional umbrella has since been adopted by this Court. *See especially Cavaness v. State,* 581 P.2d 475, 477 (Okl.Cr.1978), *cert. denied,* 439 U.S. 1117, 99 S.Ct. 1024, 59 L.Ed.2d 76 (1979).

 Obscene material is unprotected by the First Amendment. *Miller v. California,* 413 U.S. 15, 22, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973); *Roth v. United States,* 354 U.S. 476, 484–85, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957); *accord State v. Combs,* 536 P.2d 1301, 1304–05 (Okl.Cr.1975). The question is whether the Appellant's possession of obscene discs fell within the reach of *Stanley's* umbrella. First, Appellant possessed the obscene discs at Teleco, a business location physically separated from his home. Second, he held these discs with the intent to distribute them for commercial gain. We, therefore, hold that his possession of these discs was not protected by his constitutional right of privacy within the home. His proposition that Section 1024.2 is unconstitutional as applied to him is without merit.

**JURY INSTRUCTION ISSUES**

**A. THE ELEMENTS OF THE POSSESSION COUNT**

 In his next proposition of error, Appellant complains the trial court erred by improperly instructing the jury on the elements of the possession count. The trial court erroneously instructed the jury by adding the requirement that Appellant's buying, procuring or possessing of obscene material must be:

> for the purpose or intent of either distributing or trafficking in violation of law. The elements of distributing and trafficking are stated elsewhere in these instructions.

Appellant argues this error deprived him of his Fourteenth Amendment right to due process and his Sixth Amendment right to fair notice. In support of his argument, the Appellant cites *Curtis v. State,* 86 Okl.Cr. 332, 193 P.2d 309 (1948). In that case, a single count in the charging information alleged the essential elements of the separate crimes of grand larceny and larceny of domestic animals. The descriptive label of the information alleged a prosecution for grand larceny, but the defendant was convicted for larceny of domestic animals. The Court held that want of jurisdiction to render a particular judgment may arise from punishment for an offense not charged in the information and that the trial court did not have jurisdiction to try the defendant or impose a sentence for a crime not within the clearly indicated limits of the information. *Id.* 193 P.2d at 316. The present case is distinguishable from *Curtis* on two grounds. First, the trial court had jurisdiction to render the particular judgment for possession of obscene material because the essential elements of that offense were alleged in the information. Second, the trial court only added elements not alleged in the information and the additional elements neither constituted a wholly different offense than the offense charged

---

4. We must note that possession of *child pornography* within the home is neither protected by the First Amendment nor by the constitutional right of privacy within the home, and *Stanley's* reach does not extend to mere private possession of child pornography. *See Osborne v. Ohio,* 495 U.S. 103, 107–12, 110 S.Ct. 1691, 1695–97, 109 L.Ed.2d 98 (1990); *accord Shultz v. State,* 811 P.2d 1322, 1333 (Okl.Cr.1991).

nor did the additional elements in the jury instruction act to prejudice the Appellant.

The situation presented to us is more closely akin to a problem addressed in *Floyd v. State*, 829 P.2d 981, 984 (Okl.Cr.1992). In *Floyd*, the trial court erroneously instructed the jury that one of the elements of the crime of possession of a firearm after former conviction of a felony is that the firearm must be loaded. *Id.* at 983. The Court found the error did not lessen the State's burden of proof, but rather increased the State's burden by adding another element to be proved. *Id.* at 984. In *Floyd*, as in the case at bar, such an error actually benefits the defendant. *Id.* The Appellant preserved his objection to the jury instruction in the present case, and *Floyd* involved a situation where the defendant waived his challenge to the jury instructions. However, this distinction does not materially affect the applicability of *Floyd* to the present case, because the trial court's error did not prejudice the Appellant at all. The erroneous jury instruction does not rise to the level of constitutional significance. We find the error to be harmless.

## B. SCIENTER INSTRUCTIONS

■■■ In a separate proposition of error, Appellant alleges the trial court lessened the State's burden of proof by improperly instructing the jury on scienter. In *Hanf v. State*, 560 P.2d 207, 211 (Okl.Cr.1977), the Court held that in prosecutions under any obscenity statute the trial court must give, in addition to general instructions on circumstantial evidence and the statutory prohibitions, a scienter instruction. The *Hanf* instruction reads:

> You are instructed that the words "knowingly" and/or "wilfully," as used in these instructions, require that you must find beyond a reasonable doubt from all the evidence in this case (either direct or circumstantial or both) that the defendant knew the contents of the material introduced into evidence as State's Exhibit(s) No.(s) ——.

*Id.* at 211.

The trial court in the present case gave the *Hanf* instruction listing State's Exhibits 1–7

and 17–68 as the material introduced into evidence. The Appellant argues the trial court erred by adding the following language to the *Hanf* instruction:

> However, the State is not required to prove the Defendant knew the exact content or that he actually had seen or read the material, but only that he knew the nature and character of the material distributed.

> Also, it is immaterial whether the Defendant did or did not believe the material to be obscene.

The Appellant contends by going beyond the instruction in *Hanf,* the trial court gave an improper statement of law, lessened the State's burden of proof, and denied him a fair trial. We disagree. The Court recently upheld an almost identical addition to the mandatory *Hanf* instruction in *Trim v. State*, 909 P.2d 841 (Okl.Cr.1996). In order to prove scienter, the prosecution need only show the accused knew the nature and character of what he was selling. *Id.; Glenn v. State*, 749 P.2d 121, 126 (Okl.Cr.1988); *Morrison v. State*, 619 P.2d 203, 208 (Okl.Cr.1980). This standard of proof applies in cases involving the distribution, possession, and trafficking of obscene CD–ROM discs. We find the additional language to the *Hanf* instruction was in accord with settled law.

### PROOF OF SCIENTER

■■■ In another proposition of error, the Appellant claims that the State failed to prove that he knew the contents of the CD–ROM discs and thus failed to prove scienter. Whether a defendant knows the nature and character of obscene material is usually, if not always, proven by circumstantial evidence. *Glenn*, 749 P.2d at 126. The Appellant's brief seems to attack Sergeant Gracey's credibility by asserting his testimony was inconsistent. The Court will accept reasonable inferences and credibility choices that tend to support the trier of fact. *McGregor v. State*, 885 P.2d 1366, 1375 (Okl. Cr.1994). We, therefore, first address evidence of scienter supported by the testimony of Gracey, who related to the jury certain statements the Appellant made to him. The Appellant told Gracey the CD–ROM discs in

his possession "don't get any harder core than this, the discs were illegal in Oklahoma, and the local district attorney was trying to clean up the county and is real bad on pornography."

Additional grounds in support of circumstantial evidence of scienter include the fact that when the police executed the search warrant the Appellant started pointing out different discs were "adult" and identifying others which were not "adult" discs. Many of the discs the police seized had cartridge covers with sexually thematic designs, photographs, and titles. Evidence of scienter is further supported by the Appellant's newspaper advertisement which stated his bulletin board held "40,000 + Adult Files" and the Appellant's deliberate policy of separating access to the Adults Only Section by only allowing subscribers with a certain password to access the files within the Adults Only Section.

All of these circumstances could allow a reasonable fact-finder to conclude that: first, the discs contained depictions of sexual content which would be patently offensive; second, the dominant theme of the discs appealed to the prurient interest as found by the average person applying contemporary community standards; and third, the material taken as a whole lacked serious literary, artistic, educational, political, or scientific purposes or value. The fact-finder could conclude from this evidence that Appellant must have known the nature and character of the files on the discs which formed the basis of the prosecution against him. We find a plethora of evidence to show that scienter was present when Appellant delivered the first two discs to Sergeant Gracey and thereafter. *See e.g. Glenn,* 749 P.2d at 126.

### DOUBLE JEOPARDY ISSUES

The Appellant contends he was subjected to double jeopardy by his convictions for both possession of obscene material and trafficking in obscene pictures, because the discs which formed the bases of these counts are, according to his brief, the same. We disagree. Appellant incorrectly claims the State alleged the same CD–ROM discs in the possession count as in the trafficking count.

We find that the State only alleged the same CD–ROM *titles* in these two counts; and, therefore, we find Appellant is mistaken about the facts. We further find that the State independently proved possession of two of the four obscene CD–ROM discs alleged in the possession count by offering State's Exhibits 65 and 66 showing discs entitled "FAO CD–ROM, Vol. 3, Profit Publishing" and "FAO CD–ROM, Vol. 2, Profit Publishing," respectively. The police obtained these two discs from a separate room within Appellant's business. Therefore, there is sufficient evidence the Appellant possessed these two obscene discs independently from the four CD–ROM discs held within the disc changer (State's Exhibits 3, 4, 5 and 6) which were used to traffick obscene pictures to subscribers. *Ante* at n. 3.

The "same evidence" test for double jeopardy is usually applied when a series of acts are involved and the accused is charged with several counts in the same information. *Moss v. State,* 888 P.2d 509, 516 (Okl.Cr.1994). Under this test, the deciding factor in the analysis of whether there are two statutory offenses or only one is whether each provision requires proof of an additional fact which the other does not. *Posey v. State,* 805 P.2d 687, 688 (Okl.Cr.1991). This test is satisfied even if there exists substantial overlap in the proof offered to establish the crimes. *Id.*

Because the Appellant possessed two discs in addition to those he was playing on his computerized bulletin board when the police arrived, the independent possession of these two discs indicates separate crimes of possession of obscene material and trafficking in obscene pictures. We find only a substantial, and not complete, overlap in the proof offered to establish the possession and trafficking counts. As a result, each count rests upon additional facts which the other does not. The same evidence test is satisfied and the Appellant's double jeopardy argument lacks merit.

### EVIDENTIARY ISSUES

The State timely filed a *Burks* notice. *See generally Burks v. State,* 594

P.2d 771 (Okl.Cr.1979), *overruled in part on other grounds, Jones v. State,* 772 P.2d 922 (Okl.Cr.1989). The *Burks* notice properly specified that the evidence of other bad acts and crimes it intended to offer against the Appellant were admissible under several Section 2404(B) exceptions to the general prohibition against admission of other crimes evidence.

The Appellant alleges that the trial court's admission of mail order invoice forms and all CD–ROM discs seized by the police, but not alleged in the information, was prejudicial, and that the prejudice greatly outweighed the probative value of this evidence. Appellant argues that "[w]ithout establishing that the contents of these discs were obscene, they had no connection to possessing, distributing, or trafficking in obscene CD–ROM discs." Whether all the CD–ROM discs retrieved by the police were technically obscene or "soft porn" is immaterial; the Appellant assisted the police in their search by separating "non-adult" CD–ROM discs from the "adult" discs, ostensibly to prevent the police from taking non-pornographic discs. While some of the discs the police obtained may not have been patently offensive, these discs would tend to prove possession, distribution, and trafficking in material eliciting an appeal to the prurient interest, a determinative factor in the law of obscenity. *See Miller v. California,* 413 U.S. at 24, 93 S.Ct. at 2615; *see also* 21 O.S.1991, § 1024.1(2)(c).

The invoices and the discs obtained at his business tended to prove a plan or common scheme of distributing obscene pictures to customers; the invoices were relevant to show the scope of the Appellant's distribution network of sexually explicit discs. The probative value of this evidence was not substantially outweighed by the risk of unfair prejudice. *See Lalli v. State,* 870 P.2d 175, 177 (Okl.Cr.1994); *see also* 12 O.S.1991, §§ 2401, 2403, 2404(B). The evidence of additional distributions of obscene material tended to show a common scheme of distributing material and an intent to traffick in obscene pictures. There was a logical connection between the introduction of this evidence and the offenses charged. *See Salazar v. State,* 852 P.2d 729, 736 (Okl.Cr.1993).

Appellant next argues the trial court was required to admonish the jury for the limited purpose of the evidence other crimes. The Appellant did not request such a limiting instruction. Our prior decisions have held failure to request such a limiting instruction acts as a waiver. *Valdez v. State,* 900 P.2d 363, 389, n. 79 (Okl.Cr.1995); *Hyatt v. State,* 779 P.2d 993, 995 (Okl.Cr.1989); *Holt v. State,* 774 P.2d 476, 478 (Okl.Cr.1989); *Jones v. State,* 772 P.2d 922, 924–25 (Okl.Cr.1989); *Drew v. State,* 771 P.2d 224, 230 (Okl.Cr. 1989); *see also* 12 O.S.1991, § 2106. We find that the Appellant has waived this issue for appellate review.

### SUFFICIENCY OF COMPUTER CRIME EVIDENCE

In his final proposition of error, Appellant alleges there was insufficient evidence to support his conviction for using a computer to violate Oklahoma statutes. *See* 21 O.S.1991, § 1958. The crime of trafficking in obscene pictures was committed by the Appellant's operation of his bulletin board system. The Appellant's subscribers accessed data from his computer system to obtain obscene pictures on their personal home computer monitors. The four obscene discs within the disc changer were evidence that Appellant was storing data in his computer with the intent to traffic in obscene pictures. The evidence was sufficient to support the count of using a computer to violate Oklahoma statutes; and, therefore, Appellant was not denied due process. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *accord Spuehler v. State,* 709 P.2d 202, 203–204 (Okl.Cr.1985).

The judgment and sentence of the trial court is **AFFIRMED.**

JOHNSON, P.J., CHAPEL, V.P.J., and LUMPKIN and STRUBHAR, JJ., concur.