**Alan Wayne GIDEON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–45.**

Court of Criminal Appeals of Oklahoma.

July 15, 1986.

his appointment or qualifications to act as a

Kevin W. Boyd, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Susan Brimer Agosta, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

BRETT, Judge:

Appellant, Alan Wayne Gideon, was convicted of Child Abuse in violation of 21 O.S.Supp.1982, § 843, in the District Court of Tulsa County, Case No. CRF–82–4422, before the Honorable Joe Jennings, District Judge. The jury set punishment at ten (10) years' imprisonment and a five thousand

police officer that night ...

dollar ($5,000) fine. Judgment and sentence was entered in accordance with the jury's verdict. Appellant has perfected an appeal to this Court.

Early in 1982, the appellant moved in with his girlfriend, Dorothy Griffin, and her son, D.N. On November 22, 1982, Minnie Loflin babysat twenty-two (22) month old D.N. from 7:00 a.m. until the appellant picked him up around 2:00 p.m. Mrs. Loflin testified that D.N. had no bruises when he arrived and none when he left. She stated that when Ms. Griffin brought D.N. upstairs around 5:30 p.m., he had bruises on his ears and neck and was unconscious.

Dorothy Griffin testified that when the appellant picked her up at work around 5:00 p.m., D.N. was asleep in the back seat of the car. When they returned to Ms. Griffin's apartment, the appellant carried D.N. to his room. Ms. Griffin became suspicious when the appellant tried to prevent her from checking on her son by firmly grabbing her arm. When Ms. Griffin entered her son's room, she saw him choking on vomit and smelled a strong odor of liquor. Upon further examination, she discovered that both of D.N.'s ears were badly bruised and swollen, and that there were bruises on his head, chest, back and scrotum. Ms. Griffin and the appellant, after taking D.N. upstairs to Mrs. Loflin, took the child to St. Francis Hospital in Tulsa where Dr. John T. Dow examined him sometime between 6:00 and 7:00 p.m. in the emergency room.

Dr. Dow observed small bruises on the child's face, chest, and scrotum, an abrasion on his neck, and bruises and swelling on both ears. The child was limp and flaccid, and had a blood alcohol concentration of one-hundred ninety-eight thousandths (.198) percent which is almost twice the statutory level of prima facie intoxication set at ten-hundredths (.10) percent. *See* 47 O.S.Supp.1986, § 756. Dr. Dow stated that the injuries and intoxication were probably non-accidental, and that the intoxication level was potentially dangerous.

Dr. B.J. Maguire, a pediatrician, testified that the physical injuries were alone sufficient to indicate that they were inflicted on the child by someone using unreasonable force. The intoxication reinforced his opinion that the child had been abused. Dr. Maguire stated that it was unlikely that the child could have suffered the extensive injuries to both ears and the other bruises by falling out of a small rocking chair onto a carpeted floor. D.N. would have had to ingest approximately two-thirds of one ounce of 151 proof rum within thirty minutes of the blood test in order to produce the .198 alcohol concentration level. If the alcohol was consumed earlier, it could have taken as much as one ounce.

Dr. Walter Exon testified that on February 23, 1982, he examined D.N. at Hillcrest Hospital in Tulsa and determined that he had suffered an intracranial hemorrhage with a cerebral contusion. Dr. Exon's opinion was that the head injury was inconsistent with the child falling off a bed as claimed by the appellant, and that it occurred through non-accidental means.

Appellant presented several witnesses who testified that he was affectionate and loving toward D.N. Appellant testified that after he picked up D.N. on November 22, 1982, from the babysitter, he mixed a strong drink using water, lemon and 151 proof rum. According to the appellant, he set the drink on an end table next to the small rocker where D.N. was sitting and, when he returned from the bathroom about five minutes later, he discovered that D.N. had drank some of his drink. Appellant then went into the kitchen to get a piece of bread to give D.N. to soak up the alcohol he had consumed, and as D.N. was getting out of his rocker, he fell, hitting one ear on the coffee table and apparently hitting the other ear on the rocker. Appellant put D.N. to bed a short time later, and denied that D.N. became sick at any time before he picked up Ms. Griffin. Appellant explained that in February 1982, when D.N. suffered a head injury, the appellant had put him on the bed to change his diaper and that D.N. had fallen off the bed while the appellant was answering the telephone.

In his sole assignment of error, appellant contends that the trial court erred in admitting evidence of other crimes consisting of testimony by Dr. Exon regarding a previous head injury suffered by D.N. and testimony by Ms. Griffin as to threats made against her by the appellant the day before preliminary hearing to influence her to drop the child abuse charges. Appellant's contentions are not well taken.

 While the general rule is to exclude evidence of other crimes, an exception applies where the evidence of prior injuries is admitted to prove the absence of mistake or accident. 12 O.S.1981, § 2404(B). Here, the critical issue was whether the injuries resulted from abuse or whether they happened accidentally as the appellant claimed. This Court has consistently held that, in cases of this nature, past injuries are admissible to rebut any claim that the latest injury occurred through accident or simple negligence. *Freeman v. State*, 681 P.2d 84, 86 (Okl.Cr.1984); *White v. State*, 607 P.2d 713, 715 (Okl.Cr.1980); *Ashford v. State*, 603 P.2d 1162, 1164 (Okl.Cr.1979).

With regard to the testimony concerning the alleged threats made by the appellant against Ms. Griffin, the appellant has failed to establish what crime the alleged threats constituted. *See Womble v. State*, 663 P.2d 747, 749 (Okl.Cr.1983). Assuming, without actually deciding, that the alleged threats constitute evidence of "other crimes or acts" within the meaning of 12 O.S.1981, § 2404(B), we find that evidence of such threats was admissible to infer a consciousness of guilt from an attempt to improperly influence or cause the absence of a material witness at trial. *Smith v. State*, 695 P.2d 1360, 1363 (Okl.Cr.1985); *Brogie v. State*, 695 P.2d 538, 543 (Okl.Cr. 1985); *Wills v. State*, 636 P.2d 372, 376 (Okl.Cr.1981). Furthermore, the threats constitute "admissions by conduct designed to obstruct justice" and were thus admissible to establish motive. *McCormick on Evidence* 562 (E. Cleary ed. 1984).

Finally, we note that our holding is consistent with the prevailing view that the five enumerated exceptions in Section 2404(B) of the Oklahoma Evidence Code were not intended to be exclusive or exhaustive. *See* 1 L. Whinery, *Guide to the Oklahoma Evidence Code* 97 (1985); *McCormick on Evidence* 558 (E. Cleary ed. 1984). Accordingly, the judgment and sentence must be AFFIRMED.

PARKS, P.J., and BUSSEY, J., concur.