1999 OK CR 44

**Glenn Douglas ANDERSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–97–1157.

Court of Criminal Appeals of Oklahoma.

Nov. 16, 1999.

As Corrected Dec. 21, 1999.

Jim Pearson, Oklahoma City, Attorney for appellant at trial.

Robert E. Gene Christian, Bret T. Burns, Chickasha, Attorneys for the State at trial.

Katherine Jane Clark, Matthew D. Haire, Norman, Attorneys for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, Attorneys for Appellee on appeal.

## OPINION

STRUBHAR, P.J.:

¶ 1 Appellant, Glenn Douglas Anderson, was convicted of First Degree Murder

(Counts I, II and III), Shooting With Intent to Kill (Count IV), First Degree Arson (Count V), and Kidnapping (Counts VI and VII), in the District Court of Grady County, Case No. CF-96-240, after a jury trial held before the Honorable James R. Winchester. As to the three counts of First Degree Murder, the State filed a Bill of Particulars alleging four aggravating circumstances: (1) that Appellant knowingly created a great risk of death to more than one person;[1] (2) that the murders were especially heinous, atrocious or cruel;[2] (3) that the murders were committed for the purpose of avoiding or preventing a lawful arrest or prosecution;[3] and, (4) the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society.[4] With regard to Count I, the jury found two aggravating circumstances to exist, that the murder of Jim Poteet was especially heinous, atrocious or cruel and that there was a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society. Regarding Counts II and III, the jury found three aggravating circumstances to exist, that the murders of Keith Smith and Terry Shepard were especially heinous, atrocious or cruel, that there was a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society, and that the murders were committed for the purpose of avoiding or preventing a lawful arrest or prosecution. The jury assessed punishment at death on each of the three counts of first Degree Murder. The jury also assessed punishment at life imprisonment for Shooting With Intent to Kill, thirty-five years imprisonment for First Degree Arson, and ten years imprisonment for each count of Kidnapping. The trial court sentenced Appellant accordingly, ordering the sentences be served consecutively. From this Judgment and Sentence Appellant has perfected his appeal.[5]

## FACTS

¶ 2  Between 3:00 and 4:00 a.m. on September 28, 1996, Appellant burst into the trailer home of Marvin Mathesen brandishing a firearm. Appellant told Mathesen that they needed to talk. Shortly thereafter, Richard Thornburg and Roger Embrey also entered the trailer. Thornburg had been shot prior to this night and the three wanted to question Mathesen about the shooting. All three men were armed and they told Mathesen they were going to shoot him if he lied to them. The three men also suspected Jim Poteet in the shooting. They decided to question Mathesen and Poteet together so they could figure out whether Mathesen or Poteet had shot Appellant.

¶ 3  The three armed men forced Mathesen out of his trailer at gun point and drove him to Poteet's residence. Once there, Thornburg and Embrey went into the house and Appellant and Mathesen stayed in the car. When Appellant and Mathesen heard gun shots come from the house they went to see what had happened. They saw Terry Shepard sitting in a chair by the bathroom door and Poteet sitting on the bed in the back bedroom. Thornburg was holding Poteet at gun point. Poteet had been shot in the foot and was bleeding between the eyes.

¶ 4  Appellant suggested that Thornburg take Mathesen and go get any people present from Poteet's rental house which was located about seventy yards from Poteet's residence. While they were walking over to the rental house, Keith Smith walked up the driveway. Thornburg forced Smith to knock on the door of the rental house and when he did, Donnie Scott opened the door. Thornburg

1. 21 O.S.1991, § 701.12(2).

2. 21 O.S.1991, § 701.12(4).

3. 21 O.S.1991, § 701.12(5). This aggravating circumstance was only alleged as to two counts of first Degree Murder; the murders of Keith Smith and Terry Shepard.

4. 21 O.S.1991, § 701.12(7).

5. Appellant's Petition–in–Error was filed in this Court on November 24, 1997. His Brief–in–Chief was filed on October 30, 1998, and the State's Response Brief was filed on March 1, 1999. Appellant's Reply Brief was filed on March 22, 1999. The case was submitted to this Court on April 28, 1999, and oral argument was heard on August 10, 1999.

then forced Scott, Smith and Mathesen to walk back to Poteet's residence.

¶ 5 Once back at Poteet's house, Thornburg went back into the bedroom with Poteet. Soon, Embrey took Mathesen to the back bedroom. In the bedroom, Thornburg gave Mathesen a gun and told him to shoot Poteet while Appellant, Thornburg and Embrey all pointed their guns at Mathesen. A gunshot was fired from behind Mathesen and Poteet was shot in the side. The only person standing behind Mathesen at this time was Thornburg. Thornburg, Appellant and Embrey then told Mathesen to shoot another person or they would shoot Mathesen. Mathesen shot at Scott but the gun did not fire. Thornburg made Mathesen fire again while Appellant and Embrey pointed their guns at him. This time Mathesen shot Scott in the chest. Embrey took Mathesen outside to the car. While they were at the car, Mathesen heard more shots come from the house. The house was burned and Appellant, Thornburg, Embrey and Mathesen left the area in Thornburg's car. They stopped to hide the guns and let Mathesen out of the car.

¶ 6 Shortly after 5:00 a.m. Loyd Keagans and his son, who were driving by, noticed the burning house. As they drove up to the house, they saw an injured man outside. This man was Donnie Scott, who had been shot in the chest. The Keagans took Scott to a convenience store and called the police. Scott survived the shooting but the bodies of Jim Poteet, Keith Smith and Terry Shepard were found in the burned house. Each of them had been shot and had either died from gunshot wounds or a combination of gunshot wounds and fire related injuries.

¶ 7 When Scott was able, he gave a statement to the police telling what had happened. Mathesen also told the authorities what had happened. Appellant, Embrey and Thornburg were subsequently arrested.

## VOIR DIRE ISSUES

¶ 8 During voir dire, defense counsel sought to ask three prospective jurors whether they believed that different types of homicides were deserving of different types of punishments. The prosecutor objected and the objection was sustained. Appellant argues in his ninth proposition that the trial court erred in restricting his voir dire. Appellant relies on *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), to support his position that it is improper to restrict inquiry into whether the prospective jurors would automatically impose the death penalty and fail to consider the other punishment options. This Court has long held that "the extent of voir dire is within the discretion of the trial court and will not be disturbed absent abuse of discretion." *Howell v. State*, 1998 OK CR 53, ¶ 6, 967 P.2d 1221, 1224 (Okl.Cr.1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 93, —— L.Ed.2d —— (1999).

¶ 9 The record reflects that defense counsel used peremptory strikes to remove from the panel two of the jurors at issue. The other juror at issue was questioned by the trial court and stated that she could consider all of the possible punishments. We do not find that the trial court abused its discretion in restricting the voir dire as the prospective jurors were asked sufficient questions from which defense counsel could make informed decisions regarding the exercise of peremptory challenges and ascertain whether or not the prospective jurors could consider all of the punishment options and decide the case based upon the evidence. This proposition does not warrant relief.

## FIRST STAGE ISSUES

¶ 10 At trial, the State introduced into evidence numerous letters Appellant had written to his wife. These letters contained passages from which it could be inferred that Appellant was soliciting the murder of Marvin Mathesen.[6] Through these letters, Ap-

---

6. Appellant stated in a letter:
   I am realy [sic] scared that Im [sic] go [sic] to do the rest of my life in jail on death row and never be able to see or hold you or my kids again. The only way is that Fat Boy does not show & the Scott Boy can't identify us. You

know no need too thank [sic] about that until the time comes. Do you know what I'm saying to you don't worry about not being with me any more but about Fat Boy & Donnie they are the ones that will tell weather [sic] we live or die or stay in jail the rest of are [sic] lives.

pellant reiterated to his wife the alibi defense to be presented at trial and he asked her to keep his alibi witness away from the police.[7] The State also introduced the testimony of Eric Huber that Appellant had coerced him into lying to help create an alibi.[8] Appellant argues in his first proposition that the letters and Huber's testimony contained other crimes evidence and the trial court erred in failing to give his requested limiting instruction on other crimes evidence. The State argues that this evidence is not evidence of other crimes but, rather, constitutes admissions by conduct.

¶ 11 The first issue for consideration is whether the aforementioned evidence is properly characterized as other crimes evidence, admissions by conduct, or both. This Court has treated such evidence both ways. In several cases, this Court has held that actions such as attempting to improperly influence or cause the absence of a material witness at trial are admissions by conduct which are admissible to infer a consciousness of guilt. *See Gideon v. State,* 1986 OK CR 112, ¶ 10, 721 P.2d 1336, 1338. *See also Camron v. State,* 1992 OK CR 17, ¶ 22, 829 P.2d 47, 53. "Oklahoma has long held that a defendant's attempt to influence witnesses not to testify or to testify falsely is relevant and may be admitted as an admission by conduct and considered on the issue of guilt." *Douglas v. State,* 1997 OK CR 79, ¶ 50, 951 P.2d 651, 668, *cert. denied,* 525 U.S. 884, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998). *See also Wills v. State,* 1981 OK CR 140, ¶ 10, 636 P.2d 372, 376 (This Court adopted the rule that "an effort by an accused to directly or indirectly suppress or destroy evidence is relevant as a circumstance tending to show guilt."). However, even under this characterization we have required a limiting instruction be given and in *Camron,* we found the following instruction to be appropriate:

> You are instructed that under certain circumstances the conduct of the accused after a crime may be considered against him

as evidence of consciousness of guilt. Consciousness of guilt may be inferred from an intent or attempt by the accused to conceal, alter, or remove evidence of the crime. If you find as fact that the defendant did attempt to conceal, alter or remove evidence of the crime, you may infer consciousness of guilt. However, you are not bound to draw that inference. It is for you and you alone as fact finders to accept or reject this inference of consciousness of guilt and to give whatever weight, if any, you wish to this inference.

*Camron,* 1992 OK CR 17, at ¶ 26, 829 P.2d at 53–54.

■ ¶ 12 This Court has also alluded to the possibility that this type of evidence can be considered evidence of other crimes:

> Assuming, without actually deciding, that the alleged threats constitute evidence of "other crimes or acts" within the meaning of 12 O.S.1981, § 2404(B), we find that evidence of such threats was admissible to infer a consciousness of guilt from an attempt to improperly influence or cause the absence of a material witness at trial. Furthermore, the threats constitute "admissions by conduct designed to obstruct justice" and were thus admissible to establish motive.
>
> Finally, we note that our holding is consistent with the prevailing view that the five enumerated exceptions in Section 2404(B) of the Oklahoma Evidence Code were not intended to be exclusive or exhaustive.

*Gideon,* 1986 OK CR 112, at ¶¶ 10–11, 721 P.2d at 1338 (citations omitted). As is well established, when requested, a limiting instruction is required for other crimes evidence. *See Bryan v. State,* 1997 OK CR 15, ¶ 33, 935 P.2d 338, 356, *cert. denied,* 522 U.S. 957, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997). *See also Davis v. State,* 1996 OK CR 15, ¶ 44, 916 P.2d 251, 262. The sanctioned limiting instruction for other crimes evidence is as follows:

---

State's Exhibit # 44A.

He also wrote: "Is there anybody out there that will take care of Fat Boy like from back east." State's Exhibit # 45.

**7.** Appellant wrote, "Keep erick [Huber] away from the laws. If you can tell him to hold head up and stick with what he told them the first time." State's Exhibit # 43.

**8.** Trial Transcript II, pp. 287–88.

Evidence has been received that the defendant has allegedly committed misconduct/offenses(an offense) other than that charged in the information. You may not consider this evidence as proof of the guilt or innocence of the defendant of the specific offense charged in the information/indictment. This evidence has been received solely on the issue of the defendant's alleged motive/opportunity/intent/preparation/(common scheme or plan)/knowledge/identity/(absence of mistake or accident). This evidence is to be considered by you only for the limited purpose for which it was received.

OUJI–CR 2d 9–9.

■ ¶ 13 The difference between limiting instructions for other crimes evidence and evidence which constitutes an admission by conduct makes it difficult to treat this evidence as both. As noted above, other crimes evidence cannot be used as substantive evidence of guilt while admissions by conduct can. Accordingly, Appellant's argument that admissions by conduct are other crimes evidence and should be treated as such under *Burks* [9] is problematic.

¶ 14 As a practical matter, other crimes evidence and admissions by conduct generally differ in nature as well. The admission of other crimes evidence is prohibited, except under limited circumstances, because "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." 12 O.S.1991, § 2404(B). Other crimes evidence usually arises in the context of crimes or acts committed by a defendant before the action which is the subject of the current prosecution. Conversely, acts which can be considered admissions by conduct have been committed by a defendant after the action which is the subject of the current prosecution. These acts are admitted for the purpose of showing a consciousness of guilt.

■ ¶ 15 Given the differences between other crimes evidence and admissions by conduct, we find that the evidence at issue in the present case is best characterized as admissions by conduct. As such, this evidence need not be considered other crimes evidence subject to the *Burks* requirements. Accordingly, the trial court cannot be found to have erred in refusing to give the requested limiting instruction as the submitted instruction was not required. While the trial court should have given a limiting instruction similar to the one approved in *Camron*, 829 P.2d at 53–54, failure to do so does not require relief. We are convinced that the jury would have rendered the same verdict and imposed the same sentence had the correct limiting instruction been requested and given. This error did not rise to the level of plain error and relief is not warranted.

■ ¶ 16 Appellant also complains that the letters contained a reference to his desire to obtain drugs while in jail,[10] and that this was evidence of other crimes. Although Appellant argued in his Brief–in–Chief only that error occurred in the trial court's failure to give his requested limiting instruction, he argued in his Reply Brief that he was also denied notice under *Burks*. While the State did not give specific notice of its intent to introduce the contents of the letters as evidence of other crimes, the record reveals that Appellant did have notice of the State's intent to introduce the letters into evidence.[11] We find this was sufficient notice for purposes of *Burks*. *See Bryan*, 1997 OK CR 15, at ¶ 34, 935 P.2d at 357 (Although no *Burks* notice was filed, Bryan clearly had notice that the State intended to use this evidence well in advance of trial.). As sufficient notice was given, trial counsel cannot be found ineffective for failing to object to lack of notice. We also find this other crimes evidence warranted the requested limiting instruction. However, we do not find that the trial court's failure to so instruct requires relief. In light

---

9. *Burks v. State*, 1979 OK CR 10, 594 P.2d 771, overruled on other grounds by *Jones v. State*, 1989 OK CR 7, 772 P.2d 922.

10. Appellant wrote, "I would like to have some dope, you know, but you just can't seem to make it happen." State's Exhibit # 43.

11. Transcript of Pretrial Motions, June 30, 1997, pp. 8–9.

of the evidence properly admitted against Appellant at trial, this reference to his desire for drugs cannot be found to have affected the verdict or the sentence. This proposition is denied.

¶ 17 State's Exhibits 43 through 46 were letters written by Appellant from jail to his wife, Corky Anderson. These letters were obtained by the police after they stopped a car driven by Patty Clouse, a friend of Corky Anderson. The police arrested Clouse and another woman who was in the car. Anderson was not in the car but she arrived on the scene and told officers that the car belonged to her. However, title to the car was not in her name. The police impounded the car and executed an inventory search. During this search, the letters at issue were found in bags in the trunk of the car. Appellant argues in his second proposition that the letters were erroneously admitted into evidence for two reasons.

¶ 18 Appellant first complains that the letters were illegally seized in violation of his Fourth Amendment rights. Appellant acknowledges that before reaching this constitutional claim, this Court must first determine whether he has standing to contest the constitutionality of the search. To establish standing, a defendant has the burden of proving that he had a legitimate expectation of privacy in the area searched. *Chambers v. State*, 1986 OK CR 91, ¶ 8, 720 P.2d 741, 743. *See Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). *See also Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 587 (1967). Where a defendant has a clear possessory interest in the property searched, he has standing to object to the constitutionality of that search. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401, n. 12 (1978).

¶ 19 In the present case, Appellant has fallen short of proving he had a legitimate expectation of privacy in the car owned by his wife and driven by the two women. We find Appellant had neither a possessory nor property interest in the car. We are not persuaded by Appellant's argument that he had such interests merely because his wife purportedly owned the car. *See Cooks v. State*, 1985 OK CR 48, ¶ 15, 699 P.2d 653, 658, *cert. denied*, 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985)(Appellant had no standing to object to the search of a car owned by his common-law wife as he had neither a possessory nor a property interest in the vehicle). Accordingly, we find Appellant had no standing to contest the constitutionality of the search.[12]

¶ 20 Appellant next contends that the letters were protected as confidential marital communications and their introduction into evidence violated the marital privilege.[13] This Court has held that, "[s]tatements between a husband and wife are confidential if made when they are alone, or are expressly made confidential by the parties, or are induced by the marital relationship." *Johnson v. State*, 1995 OK CR 62, ¶ 45, 911 P.2d 918, 927, *cert. denied*, 519 U.S. 839, 117 S.Ct. 116, 136 L.Ed.2d 67 (1996), *citing Watkins v. State*, 1985 OK CR 79, ¶ 5, 702 P.2d 1045, 1046. Appellant argues that this privilege applies to the letters in the present case and was not waived by either him or his wife.

¶ 21 As the letters in this case inadvertently fell into the hands of a third party, we liken this situation to that where a confidential communication is inadvertently overheard by a third party. This Court has held that, "irrespective of whether communications between husband and wife are intended to be confidential, third persons may testify as to conversations overheard, whether accidentally or by design." *Stafford v. State*, 1983 OK CR 86, ¶ 35, 665 P.2d 1205, 1214, *cert. granted*, 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984), *opinion on rehearing*, 700 P.2d 223 (Okl.Cr.1985), *cert. denied*, 474 U.S. 865, 106 S.Ct. 188, 88 L.Ed.2d 157 (1985). *See also State v. Myers*, 230 Kan.

12. If Appellant had standing to contest the search of his wife's vehicle, the over-broad inventory search wherein the letters were unnecessarily read by the authorities would have presented compelling argument.

13. 12 O.S.1991, § 2504.

697, 640 P.2d 1245 (1982). Appellant's wife was not forced to testify about the contents of the letters but the letters could be properly introduced through the third party that inadvertently found them. There was no violation of the marital privilege in the present case.

¶ 22 Appellant's third proposition concerns the direct examination of his daughter at trial. Defense counsel called Appellant's daughter to testify in his defense. During direct examination, counsel asked her to explain "how the stress of your father being separated from your family over the last year has affected your mother and your father."[14] This question was met with objection. The trial court initially ruled that the question was irrelevant. Defense counsel explained that the stress Appellant was under while separated from his family was relevant to explain why he had written what he had in the letters to his wife. The trial court clarified its ruling, stating, "Stress is a subjective emotion. People can testify as to what they see or what they hear, but not as to how it affects someone else. That's the part I sustained."[15] At this point, trial counsel was free to ask the witness questions about how she had seen Appellant act since his arrest which could then be interpreted as having been stress related. However, although counsel asked the witness how she had seen her mother react, he did not ask the witness any questions about how she had seen her father react. Simply put, counsel did not pursue the line of questioning Appellant argues that the trial court prohibited. All arguments in Appellant's third proposition are based upon the presumption that the trial court prohibited trial counsel from pursuing this line of questioning. Because we find that the trial court did not prohibit counsel from asking Appellant's daughter questions about how she had seen Appellant act since his arrest, each of Appellant's arguments must fail.

¶ 23 Appellant argues in his fourth proposition that the trial court erred in failing to instruct the jury that Marvin Mathesen and Eric Huber were accomplices

whose testimony required corroboration. Appellant acknowledges that such instructions were not requested by defense counsel and accordingly, all but plain error has been waived. See Wood v. State, 1998 OK CR 19, ¶ 45, 959 P.2d 1, 12. This Court has long held that, "[t]he test used to determine whether a witness is an accomplice is whether he or she could be indicted for the offense for which the accused is being tried." Carter v. State, 1994 OK CR 49, ¶ 29, 879 P.2d 1234, 1246, cert. denied, 513 U.S. 1172, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995).

¶ 24 Appellant asserts that the only evidence that Mathesen was an unwilling bystander, rather than a willing participant in the crimes charged in this case, came from his own testimony. Accordingly, he contends that the trial court should have ruled that he was an accomplice as a matter of law. See Nunley v. State, 1979 OK CR 107, ¶ 10, 601 P.2d 459, 463. We disagree. A review of the record reveals that Donnie Scott testified that when he was taken from the rental house Mathesen was present but Thornburg was armed and was giving the orders. When they arrived at Poteet's house, Thornburg ordered Scott, Smith and Mathesen to sit. When Mathesen was taken into the back bedroom at gunpoint, he was ordered to shoot Scott or they would shoot him. This testimony supports the finding that Mathesen could not have been indicted for the crimes for which Appellant was convicted. Accordingly, he was not an accomplice and the trial court did not err in failing to instruct the jury, sua sponte, on the law regarding accomplice testimony.

¶ 25 Appellant also contends that Eric Huber should have been deemed an accomplice to several uncharged crimes and the trial court should have instructed the jury that as an accomplice to the uncharged crimes, his testimony required corroboration. In support of this argument, Appellant refers to this Court holding in Matthews v. State, 1998 OK CR 3, ¶ 20, 953 P.2d 336, 343, wherein we ruled that:

---

14. Trial Transcript III, p. 162.

15. Trial Transcript III, p. 163.

When the crime at issue is not the one for which the defendant is being tried, the witness and the defendant are still accomplices if both could be indicted for the offense. This is regardless of whether either, or both, have been charged with the other offense. A witness who was an accomplice in a crime for which the defendant is not currently being tried may have as compelling a reason for testifying about the defendant's involvement in this other crime as would a witness who was an accomplice in the same crime for which the defendant is currently being tried. It makes no sense to deny a defendant instructions requiring that the accomplice's testimony be corroborated.

The distinguishing difference between the present case and *Matthews* is that in *Matthews*, the accomplice instructions were requested. We decline to hold that trial courts are required to determine whether a witness is an accomplice to uncharged crimes when accomplice instructions are not requested. Accordingly, we find that the trial court did not err in failing to give accomplice instructions as none were requested.

¶ 26 Appellant also argues in this proposition that the testimony of Mathesen and Huber was not legally sufficient to connect Appellant to the charged crimes. The validity of this argument depends upon a finding that Mathesen and Huber were accomplices. We have found that Mathesen was not an accomplice. We have also found that the restrictions placed upon accomplice testimony do not apply to Huber as the trial court was under no obligation to consider him an accomplice. Accordingly, this argument is without merit.

¶ 27 Finally, Appellant argues that absent Mathesen's and Huber's testimony, the remaining evidence was insufficient to support his conviction for the crimes charged. Again, because Mathesen was not an accomplice and the trial court was not required to consider Huber as such, the evidence to be properly considered was not limited to all but Mathesen's and Huber's testimony. When all the evidence taken together is considered in the light most favorable to the State, it supports the jury's finding of guilt beyond a reasonable doubt. *Spuehler v. State,* 1985 OK CR 132, 709 P.2d 202.

¶ 28 Appellant complains in his fifth proposition that he was denied his Sixth Amendment confrontation rights due to the introduction of hearsay statements of non-testifying codefendants. Appellant was charged jointly in this case with codefendants Richard Thornburg and Roger Embrey, who were both tried separately. Appellant argues that testimony by Mathesen about comments made by Thornburg and Embrey during the commission of the crimes constituted hearsay and should not have been admitted at his trial. Appellant acknowledges that none of the comments at issue on appeal were objected to by defense counsel at trial. Accordingly, this Court can review these comments only for plain error. *Simpson v. State,* 1994 OK CR 40, 876 P.2d 690.

¶ 29 While many of the comments at issue were hearsay and should not have been admitted at trial, we do not find that the improper admission of these comments rose to the level of plain error. In addition to the hearsay comments attributed only to the codefendants, there were numerous statements attributed to all three codefendants and some to Appellant alone which indicated his participation in the commission of the crimes. These properly admitted statements, along with the eyewitness accounts of the actual activities which transpired, provided overwhelming evidence supporting Appellant's conviction. Accordingly, the improperly admitted hearsay statements did not rise to the level of plain error and do not warrant relief.

## ISSUES RELATING TO BOTH STAGES OF TRIAL

¶ 30 Appellant argues in his eleventh proposition that numerous errors in the introduction of evidence deprived him of his constitutional right to a fair trial and fair sentencing proceeding. He first complains that although Donnie Scott testified that he had not seen Appellant in the house on the night that the homicides occurred, Scott was allowed to improperly bolster the testimony and vouch for the credibility of Marvin Mathesen by saying that Mathesen could be relied

upon to say who was present that night. Defense counsel objected to this testimony on the grounds that it was not relevant, and the objection was sustained. Appellant complains that no admonishment was given, but the record reflects that none was requested. This Court has held that where Appellant could have requested a jury admonition but chose not to do so, this Court will not second guess trial counsel's strategy in not requesting an admonition, and will not allow Appellant to claim reversible error where he failed to make the request. *Cheatham v. State*, 1995 OK CR 32, ¶ 35, 900 P.2d 414, 425. As this error did not rise to the level of plain error, reversal is not warranted.

¶ 31 Appellant also complains that Darwin Horman, an OSBI serologist improperly rendered an opinion on the cause of the fire. This, it is argued, was impermissible as it was outside the scope of his stated expertise. This testimony was not met with objection. Accordingly, all but plain error has been waived. *See Howell*, 1998 OK CR 53, at ¶ 9, 967 P.2d at 1225. We do not find that this single comment, which mirrored the expert testimony of the Fire Marshall, rose to the level of plain error.

¶ 32 Next, Appellant argues that error occurred when Eric Huber testified that he thought Appellant, Thornburg and Embrey left the bar to go to Poteet's house, but he was "not for sure."[16] Appellant contends this testimony was speculative and not supported by Huber's personal knowledge. Again, this testimony was not met with objection and all but plain error has been waived. *See id.* The jury was well aware of Huber's uncertainty and this comment did not rise to the level of plain error.

¶ 33 Appellant's next argument concerns the introduction into evidence of a silver Zippo lighter. Mathesen testified at trial that while he was being held in Poteet's house, he took a silver Zippo lighter off the kitchen table to light a cigarette. Appellant took the lighter from him, said that it was his, and lit some newspaper on fire with it. When Appellant was booked into the Grady County jail, he was in possession of a silver Zippo lighter. This lighter was introduced into evidence over defense objection. Appellant argues on appeal that the introduction of this lighter was in error as there was no proof that this was the lighter used to start the fire at Poteet's house. It is argued that the probative value of this lighter was substantially outweighed by the danger of unfair prejudice. 12 O.S.1991, § 2403. We find that the lighter was relevant as it tended to corroborate the testimony of Mathesen and its probative value was not substantially outweighed by the danger of unfair prejudice. There was no error in the introduction of this evidence.

¶ 34 Appellant also complains that error occurred when Mathesen testified that Poteet was in pain after being shot in the foot. Appellant argues that this was not relevant to the first stage of trial. Mathesen's perceptions of what happened in the house on the night of the homicides were relevant. While the comment as to the degree of pain suffered by Poteet may have been subjective, it was not met with objection and accordingly, all but plain error has been waived. This does not rise to the level of plain error.

¶ 35 Next, Appellant argues that error occurred when a letter written by Appellant to his wife which alluded to Appellant's desire for drugs was admitted into evidence. Appellant contends that this portion of the letter was not relevant. Appellant failed to object to the admission of this letter based upon relevancy. Accordingly, he has waived review of this ground on appeal. *See Hill v. State*, 1995 OK CR 28, ¶ 26, 898 P.2d 155, 164. We do not find that the admission of this portion of the letter was plain error.

¶ 36 Finally, Appellant complains that during the direct examination of Deputy Sheriff Tony Willis, an evidentiary harpoon was interjected by Willis who testified that when Appellant was searched he had in his possession a butterfly knife and a pouch that contained codeine, valium and methamphetamine. Appellant moved for a mistrial because the State had agreed not to introduce

16. Trial Transcript II, p. 285.

evidence of drug possession. The motion was denied. This Court has held that evidentiary harpoons have several characteristics: "(1) they are generally made by experienced police officers; (2) they are voluntary statements; (3) they are willfully jabbed rather than inadvertent; (4) they inject information indicating other crimes; (5) they are calculated to prejudice the defendant; and (6) they are prejudicial to the rights of the defendant on trial." *Ochoa v. State*, 1998 OK CR 41, ¶ 39, 963 P.2d 583, 598, *cert. denied*, 526 U.S. 1023, 119 S.Ct. 1263, 143 L.Ed.2d 358 (1999), *quoting Bruner v. State*, 1980 OK CR 52, ¶ 16, 612 P.2d 1375, 1378-79.

¶ 37 In the present case, Deputy Willis' comment was not an evidentiary harpoon as it was a response to a direct question posed by the prosecutor. Had defense counsel interjected a timely objection to the question, the answer would not have been heard. Counsel could also have asked that the jury be admonished not to consider evidence of drug possession. In any case, the comment cannot be found to have been so prejudicial as to require relief.

¶ 38 In his twelfth proposition Appellant asserts that the admission into evidence of seven photographs of the victims' charred remains constituted error undermining the fairness of the trial as to make the resulting verdicts a denial of due process and rendering the death sentences unreliable. These photographs were indeed gruesome. However, the test for admissibility of photographs is not whether they are gruesome or inflammatory, but whether their probative value is substantially outweighed by the danger of unfair prejudice. *Hooks v. State*, 1993 OK CR 41, ¶ 24, 862 P.2d 1273, 1280, *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994); 12 O.S.1991, § 2403. Whether to introduce photographs of a homicide victim is a decision largely within the trial court's discretion. *Id.* A trial court's decision to allow the introduction of photographs will not be disturbed absent an abuse of discretion.

¶ 39 It is well established that "photographs of murder victims can be probative in many respects.... They can show the nature, extent and location of wounds,

establish the corpus delicti, corroborate testimony of medical examiners and expert witnesses and depict the crime scene." *Smallwood v. State*, 1995 OK CR 60, ¶ 33, 907 P.2d 217, 228, *cert. denied*, 519 U.S. 980, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996). Here, the photographs at issue are probative insofar as they corroborate the medical examiner's testimony, depict the crime scene and establish corpus delicti. The photographs are disturbing but their prejudicial effect does not substantially outweigh their probative value. The trial court did not abuse its discretion in admitting the photographs into evidence.

¶ 40 Appellant complains in his thirteenth proposition that prosecutorial misconduct occurring in both stages of trial deprived him of a fair trial and a reliable sentencing proceeding. Only two of the comments of which Appellant complains were met with objection at trial. Thus, as to the comments not met with objection, Appellant has waived all but plain error. *Darks v. State*, 1998 OK CR 15, ¶ 53, 954 P.2d 152, 166. See *also Robinson v. State*, 1995 OK CR 25, ¶ 10, 900 P.2d 389, 395-96. This Court has long held that the right of argument contemplates a liberal freedom of speech, and that the range of discussion, illustration, and argumentation is wide. *Marshall v. State*, 1998 OK CR 30, ¶ 20, 963 P.2d 1, 8, *cert. denied*, 525 U.S. 1125, 119 S.Ct. 910, 142 L.Ed.2d 908 (1999). We find that most of the comments not met with objection fell within the prosecutors' wide range of permissible argument. We also find that those comments which were inappropriate were not so egregious as to rise to the level of plain error.

¶ 41 Of the comments met with timely objection, we find that neither warrants relief. The prosecutor's statement that Appellant, Thornburg and Embrey left together in the car was an inference reasonably drawn from the evidence. The second comment which drew an objection was not a direct comment on Appellant's failure to testify and does not warrant relief.

¶ 42 In his fourteenth proposition, Appellant contends he was denied effective assistance of trial counsel. Appellant cites as deficient performance trial counsel's fail-

ure to request an in camera hearing on the admissibility of coconspirator statements, failure to object to the substantive use of hearsay testimony, failure to object to prosecutorial misconduct and failure to object to improper victim impact evidence. To successfully prove ineffective assistance of counsel, Appellant must show: (1) that defense counsel's performance was deficient; and (2) that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See also Douglas*, 1997 OK CR 79, at ¶ 108, 951 P.2d at 679. Failure to prove either of these elements is fatal to Appellant's entire claim. *Id.*

¶ 43 The merits of all of the claims set forth in this proposition as ineffective assistance of counsel are discussed in this opinion. We found that some of defense counsel's alleged omissions were not error. However, other alleged omissions were deemed to have been error and can be considered deficient performance on the part of defense counsel. However, because we do not find that Appellant was prejudiced by counsel's deficient performance, relief is not warranted on the claim of ineffective assistance of counsel.

## SECOND STAGE ISSUES

¶ 44 Appellant argues in his sixth proposition that even if the deaths of the victims were especially heinous, atrocious or cruel, the evidence did not establish that he was the one who caused this. In support of his argument, Appellant cites to this Court's rulings in *Barnett v. State*, 1993 OK CR 26, 853 P.2d 226 and *Hawkins v. State*, 1994 OK CR 83, 891 P.2d 586. It is notable that in both of these cases the acts of the codefendants which provided the basis of the especially heinous, atrocious or cruel aggravating circumstance, were committed by the codefendants completely independent of the defendant. In the present case, although the codefendants may have committed some of the acts which rendered the killings especially heinous, atrocious or cruel, the record supports a finding that Appellant actively encouraged the shooting of the victims and, at the very least, acquiesced to the setting of the fire. We find Appellant's participation in

the murders of Poteet, Shepard and Smith was significant and sufficient to support the especially heinous, atrocious or cruel aggravating circumstance.

¶ 45 In his seventh proposition Appellant argues that there was not sufficient evidence to establish beyond a reasonable doubt that Smith and Shepard were killed to prevent his arrest or prosecution for Poteet's murder.

When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is whether there was any competent evidence to support the State's charge that the aggravating circumstance existed. In making this determination, this Court should view the evidence in the light most favorable to the State.

*Hain v. State*, 1996 OK CR 26, ¶ 62, 919 P.2d 1130, 1146, *cert. denied*, 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). "The focus of the aggravating circumstance that the murder was committed to avoid lawful arrest or prosecution is the state of mind of the murderer; it is he who must have the purpose of avoiding or preventing lawful arrest or prosecution." *Gilbert v. State*, 1997 OK CR 71, ¶ 104, 951 P.2d 98, 122, *cert. denied*, 525 U.S. 890, 119 S.Ct. 207, 142 L.Ed.2d 170 (1998). Further, this aggravator requires a predicate crime, separate from the murder, for which the appellant seeks to avoid arrest or prosecution. *Id. See also Barnett*, 1993 OK CR 26, at ¶ 30, 853 P.2d at 233.

¶ 46 Appellant first argues that this aggravating circumstance must fail as to the murders of Smith and Shepard because it is not possible to tell from the evidence whether Poteet died before Smith or Shepard. Thus, he contends the evidence does not support a finding that Smith and Shepard were killed to prevent Appellant from being arrested or prosecuted for Poteet's murder. It does not matter that Poteet may actually have died after Smith and/or Shepard. The record clearly supports a finding that Poteet was assaulted and then shot before Smith and Shepard were shot. Equally untenable is Appellant's argument that the

three deaths were part of one continuing transaction and as such, one cannot be used to support this aggravator for the other two. This Court has applied no such restriction on the application of this aggravator. *See Hooper v. State*, 1997 OK CR 64, ¶ 42, 947 P.2d 1090, 1106–1107, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 722 (1998)(Evidence supported a finding that Hooper shot Tonya because he sought to avoid arrest or prosecution for Cindy's murder. Cindy's murder, although contemporaneous in time and place, provided a sufficient predicate crime.).

■ ¶ 47 Next, Appellant argues that there was no evidence to establish beyond a reasonable doubt that he intended for Smith and Shepard to be killed to prevent his arrest or prosecution for Poteet's murder. The Appellant's intent regarding this aggravating circumstance can be inferred from circumstantial evidence. *Mollett v. State*, 1997 OK CR 28, ¶ 49, 939 P.2d 1, 13, *cert. denied*, — U.S. ——, 118 S.Ct. 859, 139 L.Ed.2d 758 (1998). There was sufficient circumstantial evidence from which the jury could find beyond a reasonable doubt that Appellant intended that Smith and Shepard be killed in order to prevent his arrest and prosecution for the murder of Poteet.

■ ¶ 48 In his eighth proposition, Appellant argues that the evidence was insufficient to prove beyond a reasonable doubt the existence of a probability that he would commit criminal acts of violence that would constitute a continuing threat to society. When the continuing threat aggravating circumstance is alleged, the State is required to present proof that the defendant's behavior presents a threat to society and that the threat will continue in the future. *Perry v. State*, 1995 OK CR 20, ¶ 61, 893 P.2d 521, 536.

¶ 49 In support of this aggravating circumstance, the State relied upon the brutal and callous manner in which the murders in this case were committed and upon letters written by Appellant encouraging others to eliminate witnesses who would testify against him at trial. This Court has held that the callous nature of the crime supports this aggravating circumstance. *See Pennington v. State*, 1995 OK CR 79, ¶ 70, 913 P.2d 1356, 1371, *cert. denied*, 519 U.S. 841, 117 S.Ct. 121, 136 L.Ed.2d 72 (1996). We have also found unadjudicated crimes and threats of violence to support this aggravator. *See Turrentine v. State*, 1998 OK CR 33, ¶ 77, 965 P.2d 955, 978, *cert. denied*, 525 U.S. 1057, 119 S.Ct. 624, 142 L.Ed.2d 562 (1998); *Johnson v. State*, 1996 OK CR 36, ¶ 36, 928 P.2d 309, 318. As we find the evidence was sufficient to support the finding that Appellant poses a continuing threat to society, this proposition must fail.

■ ¶ 50 The State called two witnesses to give victim impact testimony during the second stage of trial. Appellant argues in his tenth proposition that the use of the victim impact testimony was error for several reasons. He first complains that the testimony exceeded the scope of permissible victim impact evidence because it was based exclusively on the emotional impact the witnesses suffered as a result of the victims' deaths. He specifically complains that the mother of Keith Smith focused exclusively on the emotional impact of her son's death and speculated upon how it would impact her. He also claims that Terry Shepard's sister-in-law improperly testified about how his death would impact the entire family.

■ ¶ 51 Victim impact evidence is intended to provide a "quick glimpse" of a victim's characteristics and the effect of the victim's death on survivors. *Cargle v. State*, 1995 OK CR 77, ¶ 75, 909 P.2d 806, 828, *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996). "[V]ictim impact evidence should be restricted to those unique characteristics which define the individual who has died, the contemporaneous and prospective circumstances surrounding that death, and how those circumstances have financially, emotionally, psychologically, and physically impacted on members of the victim's immediate family." *Id.* While the victim impact testimony complained of did border upon impropriety, its speculative nature and focus on emotion was not so overwhelming as to divert the jury from its duty to reach a reasoned response. Further, any hearsay admitted during the testimony of the

victim impact witnesses was not met with objection. All but plain error has been waived. *See Simpson v. State*, 1994 OK CR 40, 876 P.2d 690. We find no plain error in the admission of hearsay testimony.

¶ 52 Appellant next complains that the State failed to provide sufficient pretrial notice of the victim impact testimony and the trial court failed to hold an *in camera* hearing regarding the proposed victim impact evidence. In *Cargle*, 1995 OK CR 77, at ¶ 76, 909 P.2d at 828, this Court held the State must file a notice of intent to produce victim impact evidence detailing the evidence it seeks to introduce. Further, prior to offering victim impact evidence, the trial court should hold an *in camera* hearing to determine the admissibility of the proposed evidence pursuant to 12 O.S.1991, § 2403. *Id.* The State is limited to the evidence listed in its notice and no other victim impact evidence should be admitted. *Id.*

¶ 53 Appellant asserts that the State provided no notice that it would produce either victim impact witness. Although the record contains victim impact statements from several members of the Shepard family, neither of the witnesses who testified was included on this list. Accordingly, the record supports Appellant's assertion that notice in this case was inadequate and the failure to conduct an *in camera* hearing was error. However, the record also reflects that defense counsel did not object to the presentation of the victim impact evidence at trial and therefore, has waived all but plain error. *See Le v. State*, 1997 OK CR 55, ¶ 38, 947 P.2d 535, 551, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). In light of the strong evidence admitted in support of the aggravating circumstances, the two short, but emotional, victim impact statements can be found to have been harmless beyond a reasonable doubt. This error was not plain error and does not require relief.

¶ 54 Finally, Appellant complains that victim impact evidence has no place in Oklahoma's sentencing scheme as it operates as an irrelevant, improper, nonstatutory "superaggravator" that will always be present in every capital case. This Court has held that victim impact evidence does not act as a "superaggravator" and is a relevant consideration under Oklahoma's capital sentencing scheme. *See Douglas*, 1997 OK CR 79, at ¶ 82, 951 P.2d at 675. We decline to hold otherwise at this time.

¶ 55 Appellant argues in his fifteenth proposition that the trial court improperly instructed the jury that the "especially heinous, atrocious or cruel" aggravating circumstance is directed toward crimes where the death of the victim is proceeded by torture of the victim or "serious abuse" rather than "serious physical abuse" as is proper under Oklahoma law. *See* OUJI–CR 2d 4–73. Appellant argues that this instruction did not channel the jury's discretion limiting its consideration to torture or "serious physical abuse." Appellant is correct in his assertion that this instruction was given in error. *See Turrentine*, 1998 OK CR 33, at ¶ 67, 965 P.2d at 975. However, we have also found this error to be harmless as the incorrect instruction does not lessen the standard of proof and thus could not have impacted the sentencing decision. *Id.* We hold no differently now.

¶ 56 In his sixteenth proposition, Appellant challenges the constitutionality of two of the aggravating circumstances found to exist in the present case. He recognizes that this Court has in the past addressed the constitutionality of these aggravating circumstances. This Court has in fact consistently upheld the constitutionality of the "continuing threat" aggravating circumstance. *See Cannon v. State*, 1998 OK CR 28, ¶ 73, 961 P.2d 838, 855. *See also Bryan*, 1997 OK CR 15, at ¶ 55, 935 P.2d at 365. This Court has also consistently rejected challenges to the "especially heinous, atrocious or cruel" aggravating circumstance. *Willingham v. State*, 1997 OK CR 62, ¶ 68, 947 P.2d 1074, 1087, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). Although Appellant urges this Court to reconsider our prior holdings regarding the constitutionality of these two aggravating circumstances, we decline to do so at this time.

¶ 57 Appellant argues in his eighteenth proposition that if none of the errors are sufficient for reversal on their own, then the combined effect of the errors deprived him of a fair trial and the cumulative error requires reversal.

This Court has held that where there is no error present, there can be no accumulation of error. However, when there have been numerous irregularities during the course of the trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial.

*Smith v. State,* 1996 OK CR 50, ¶ 62, 932 P.2d 521, 538, *cert. denied,* 521 U.S. 1124, 117 S.Ct. 2522, 138 L.Ed.2d 1023 (1997) (citations omitted). *See also Bechtel v. State,* 1987 OK CR 126, ¶ 12, 738 P.2d 559, 561. While it can be found in the present case that there were some irregularities during the course of the trial, even taken together, these cannot be found to have been so great as to have denied Appellant a fair trial. Accordingly, after reviewing the errors in aggregate, we find that they were harmless beyond a reasonable doubt and do not warrant relief.

## APPLICATION FOR EVIDENTIARY HEARING AND MOTION FOR NEW TRIAL

¶ 58 Appellant has filed a motion for a new trial and an application for an evidentiary hearing on the issue of whether the jury's reliance on group prayer during their deliberations constituted an improper outside influence on any juror.

¶ 59 The record on appeal may be supplemented with matters not presented to and included as part of the district court record under two circumstances. One circumstance is "[m]atters timely and properly admitted as a part of a motion for new trial as set out in Sections 952 and 953 of Title 22 and Rule 2.1 of the Rules of the Court of Criminal Appeals." Rule 3.11(B)(3)(a), Rules of the Oklahoma Court of Criminal Appeals, 22 O.S.Supp.1998, Ch. 18, App. It is set forth in Rule 2.1 that "[i]f a motion for a new trial on newly discovered evidence is filed on or after an appeal has been perfected in this Court

and prior to the expiration of one (1) year from the date that the Judgment and Sentence is pronounced, the motion shall be filed with the clerk of this Court." Rule 2.1(3), Rules of the Oklahoma Court of Criminal Appeals, 22 O.S.Supp.1998, Ch. 18, App. Further, "[a] motion for a new trial on the ground of newly discovered evidence may be made within (3) months after such evidence is discovered but no such motion may be filed more than one (1) year after judgment is rendered...." *See* 22 O.S.1991, § 953.

¶ 60 In the present case, the Judgment and Sentence was pronounced at Formal Sentencing on July 28, 1997. The motion for a new trial and attached application for evidentiary hearing was filed with the Court Clerk on October 30, 1998. It is clear that Appellant's motion for a new trial is out of time, and accordingly, said motion and attached application are denied.

## MANDATORY SENTENCE REVIEW

¶ 61 In accordance with our statutory duty, we must now determine whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and also whether the evidence supports the jury's finding of the alleged statutory aggravating circumstances. *See* 21 O.S.1991, § 701.13(C). We are satisfied that neither passion, prejudice nor any other arbitrary factor contributed to the jury's sentencing determination. After carefully reviewing the evidence presented, we also find that it supported the jury's finding of the aggravating circumstances.

¶ 62 Finding no error warranting reversal or modification, Appellant's Judgment and Sentence is **AFFIRMED**.

JOHNSON, CHAPEL and LILE, JJ., concur.

LUMPKIN, V.P.J.: concurs in results.

LUMPKIN, Vice–Presiding Judge: concurs in results.

¶ 1 I concur in the Court's decision to affirm the judgment and sentence in this case. However, because I disagree with part

of the analysis, I can concur only in the results reached.

¶2 In its discussion concerning whether Appellant's letters containing a reference to his desire to obtain drugs while in jail were evidence of other crimes, the Court disregards our rules when it states that Appellant attempted to raise a new proposition of error in his reply brief and the Court addresses the issue on its merits. Our rules provide "[a]ny propositions of error advanced for the first time in any reply brief shall be deemed waived and forfeited for consideration." Rule 3.4(F)(1), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (1998). Therefore, I find the issue of denial of notice under *Burks*[1] has been waived.

¶3 Based on my analysis of the duress defense in *Spunaugle v. State,* 946 P.2d 246, 253–55 (Okl.Cr.1997) (Lumpkin, J., dissenting) I find Marvin Matheson could have been indicted for the crimes committed and therefore was an accomplice. However, sufficient evidence was presented to corroborate his testimony and there is no plain error.

¶4 Further, it should be noted the criteria set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for evaluating effectiveness of counsel has been further explained in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Applying the *Lockhart* standard, the record is void of any evidence the trial was rendered unfair and the verdict rendered suspect or unreliable.

---

1. *Burks v. State,* 594 P.2d 771.